125 Miss.]                    *Syllabus.*    ·

PARKER *v.* BOARD OF SUP'RS OF GRENADA COUNTY.

[88 South. 172, No. 21900.]

1. APPEAL AND ERROR. *Supreme court may dismiss bill on affirming decree sustaining demurrer.*

When a decree sustaining a demurrer to a bill in equity is affirmed on an appeal to settle the principles of the case, and it does not appear that any amendment can be made to the bill of such character as to entitle the complainant to relief, the cause will not be remanded, but a final decree dismissing the bill will be rendered by the supreme court.

2. COUNTIES. *Validity of bond issue cannot be questioned after validation under statute, although issued without authority.*

The validity of bonds issued by a county, municipality, or district is conclusive, and cannot be questioned after they have been confirmed and validated under the provisions of chapter 28, Laws Ex. Sess. 1917, although the county, municipality, or district issuing them was without authority so to do.

APPEAL from chancery court of Grenada county.

HON. J. G. McGOWEN, Chancellor.

Bill by Harry Parker against the board of supervisors of Grenada county to enjoin a bond issue. A demurrer to the bill was sustained, and plaintiff appeals. Affirmed, and bill dismissed.

*Cowles Horton,* for appellant.

The claim is made that this suit cannot be maintained in any event, even though the bonds were not authorized by law, on account of the validating proceedings under chapter 28, Laws of 1917. This claim and the opinion of the learned court below sustaining this position presents to the court the most important question here involved. This question is important not only in this litigation, but also because it involves the proper construction and meaning and effect of this chapter 28, presented for the first time to this court.

Great reliance is placed by the board on the case of *Bacott* v. *Board,* 76 So. 765, and the contention is advanced that this case settles the question here involved. This view, we think, is clearly erroneous. There is nothing in the Bacott case which would prevent a reversal in the case at bar. The questions there presented were entirely foreign to the ones raised by this record, and the court can stand exactly on that case, and at the same time hold here that the act in question does not authorize the chancery court to validate bonds issued without authority.

In the Bacott case, the questions were: (A) Whether those bonds were valid, and the court held that they were; (B) If Laws of 1917 was a valid statute, and the court held that it was. Both of those questions were determined there, and both of them conceded here.

In the Bacott case, there was a direct appeal to this court and section 3 of the act was not and could not have been considered in that lawsuit. Not only so but if the court in that case had held that those bonds were not valid by the very act itself, it would have pronounced them so, without regard to the chancellor's holding.

The case at bar presents an entirely different question and that question is this: "Does the chancery decree validating bonds issued without authority become conclusive as against a direct attack that the bonds are valid?"

I shall concede that the decree would be conclusive as to all matters of procedure and all acts *in pais,* about which an estoppel would arise in favor of bond purchasers without notice. I concede further, so far as this suit is concerned, that the decree would be conclusive as against a collateral attack for any reason. I do not concede, however, but on the other hand deny, that the legislature ever intended to delegate legislative authority to the chancellor to cure fundamental defects in the issue itself and authorize *nunc pro tunc,* the issuance of bonds contrary to the legislative will.

I suppose there will be no dispute about the proposition that this attack is direct and not collateral. The question, at any rate, is settled in *McKinney* v. *Adams,* 95 Miss. 832. That case follows and applies the principles already announced in the cases of *Gerdine* v. *Duncan,* 59 Miss. 550; *Crawford* v. *Redus,* 54 Miss. 700; *Sivley* v. *Summer,* 57 Miss. 712.

But for section 3 of the act, I do not think there would be any disagreement between counsel about the matter at all, in view especially of the fact that under this chapter the chancellor exercises a special and limited, and not a general, jurisdiction. Because of this and because of the rule which is applicable to such courts, it is fair to state that section 3 of the act was inserted so that decrees rendered under the act would stand upon the same basis as decrees of courts in the exercise of their general jurisdiction. This would change the rule with regard to the presumption in favor of such decrees, and this is not true. Then we have the singular situation that decrees rendered under this act cannot be attacked for any ground, directly or otherwise, whether the court had jurisdiction or not, while the decrees and judgment of all other courts, even in the exercise of their general constitutional jurisdiction, would be and are always subject to such attack, as held in the cases cited. No such purpose, we think, can be gathered from the statute that such was the legislative will, if, indeed, the act could stand itself on such construction.

No one, of course, would ever contend that the language of this section was ever intended to apply literally and exactly as the words import. This would make the decree conclusive of the validity of bonds issued in violation of the constitution itself, for which no lawyer could ever contend. *Sykes* v. *Columbus,* 55 Miss. 116.

If this were not true, then the bonds condemned in the Columbus case, if validated under such proceedings, would have remained valid obligations, not because authorized but merely because of a decree reciting that they were valid

making that decree conclusive to all extent and for all purposes. Our friends on the other side would not, of course, contend that the decree could be so powerful, but the fact that they would not is an admission, to be sure, that the language of the act must be construed in a reasonable manner and in keeping with the legislative policy and the laws of the state.

There is, of course, a great difference between ratification of bonds that are illegal, and a decree adjudging that the bonds are valid, because, in the opinion of the court, they are valid under the law. The first is a matter of legislation, pure and simple, and I submit to the court that nowhere in this act do we find any indication of a legislative intent to delegate to the chancellor the power to ratify bonds by curative measures. If his decree is conclusive, it is because of the fact that it is not subject to any attack whatever except by appeal, but he cannot, we submit, validate any bonds under that act unless he does so because he believes them valid.

The ratification of invalid bonds is clearly the function of the legislature, as held by this court in *Vicksburg* v. *Griffith,* 102 Miss. 1, and repeatedly shown in the following cases from the United States supreme Court: *Bolles* v. *Brimfield,* 120 U. S. 759; *Bank* v. *Yankton,* 101 U. S. 129; *Otoe* v. *Baldwin,* 111 U. S. 1; *Quincy* v. *Cooke,* 107 U. S. 549; *Read* v. *Plattesmouth,* 107 U. S. 568; *Jasper Co.* v. *Ballon,* 103 U. S. 745; *Jonesboro* v. *R. R. Co.,* 110 U. S. 192.

Assuming that the legislature could confer upon the chancery court the power of legislation, the fact remains that it has not done so under this act, since it is very clear that it was never intended for the court to do anything else than to adjudge. Whether the bonds be valid or not, leaving the decree, as we submit, still open to a direct attack if the court shall act without or beyond the scope of its jurisdiction.

*W. M. Mitchell,* for appellee.

Granting for the sake of the argument that appellant's objections and contentions are all well taken and sound, and would render this bond issue illegal in the absence of validation; yet we maintain that the necessary legal steps have been duly taken and done to cure all these alleged defects and irregularities, and those bonds have been legally validated and freed from any attack in any court in this state by the decree of the chancery court of Grenada county entered in this matter for their validation under the provisions of chapter 28, Laws of 1917, and that the complaint in this injunction suit, in common with all the world, is bound by said decree and is now estopped by same from attacking validity of said bonds or seeking to prevent their delivery to the purchasers thereof, he having had his day in court, and failed to appear and file his objections or to take an appeal from that decision.

In view of the decision of this court in the case of *Bacot v. Board of Supervisors,* 86 So. 765, sustaining the constitutionality of chapter 28, Laws of 1917, and in view of the competeness with which this question is presented by the able brief filed by the distinguished and learned state's bond attorney in this case, I feel that it would be an imposition upon the patience of this court for me to attempt to elaborate upon this point, and I shall therefore submit this matter, with the request that the court, if it can see its way clear to do so, pass upon the question of the validity of the bonds issued by a road district composed of the whole county, but from which one supervisor's district has subsequently to its formation been separated and formed into another separate road district, independently of this validation proceeding. In other words, whether or not the formation of a separate road district within the county under a different law, destroyed the county unit district under chapter 150, Laws of 1910, and amendments, and required that the remaining portion of the county

either split up into beat districts or reorganize under a different act.

*J. B. Harris,* for appellee.

I felt when this court had decided the case of *Bacot v. The Board of Supervisors of Hinds County,* 86 So. 765, that there could be no question as to the meaning of that opinion and as to the scope and the meaning of chapter 28, Acts of 1917, in relation to the validation of bonds.

The transcript of the record of the proceedings of the board was submitted to the state's bond attorney for an opinion as to the validity of the bonds as required and provided by chapter 28, Laws of 1917. (See page 41, transscript). No appeal was taken from any order of the board in reference to the said bonds.

The bond attorney rendered an opinion that the bonds were legal, valid and binding and prepared a decree as required by the act, to be signed by the chancellor in the event no objections were filed. The same were transmitted to the clerk of the chancery court as required by the act of 1917, the cause was docketed and the chancellor notified and requested to fix a day for the hearing. A day was fixed and a notice to the taxpayers was duly published as required by the act, and no objections being filed the chancellor signed the decree drawn by the state's bond attorney validating the bonds, the decree reciting that no objections were filed and that no appeal was taken from any order of the board in relation to the said bonds. There is no question raised that the proceedings in reference to the validation found were not in strict conformity with the statute, Act 1917.

It was expressly decided in the Bacott case that "except in so far as the constitution may otherwise provide," the legislature has full power to provide both for the issuance of bonds by municipalities, counties and other public bodies of like character and for validation before their issuance of bonds proposed to be issued by such bodies with-

out authority to do so." In other words, as I understand the Validation Act and the decision of this court in the Bacot case construing it, the bonds issued or proposed to be issued by bodies authorized to issue bonds can be validated under the Act of 1917 to the same extent that they could be authorized or validated by a legislative act although not authorized specially or speficially to issue the · particular bond. The court will see that it is not claimed by the appellant in this case that any constitutional provision was violated. The bonds here in question were subject to legislative validation. In the conclusion of his brief counsel says that nothing but a legislative curative act would serve to render the bonds valid, if they could be rendered valid by a curative act they are rendered valid by this validation proceedings.

We elaborately discussed the purpose of this Act and its effect in the brief filed in the case of *Bacot* v. *The Board of Supervisors of Hinds County,* and refer the court to that brief, and we say here that unless some constitutional restriction can be pointed out the bonds in this case are valid to the same extent that they could be made valid by an act of the legislature. We insist here as we insisted in the Bacot case that these bonds stand as if they had been validated by a legislative act because they are made valid by the very terms of the act which requires the chancellar to sign the decree where no objections are filed within the time prescribed by the act. In other words in a case of this character the bonds are validated by the very terms of the act itself.

Under the validation Act, chapter 28, Acts of 1917, a proceeding is started in the chancery court by the filing of the transcript of the record of the proceedings of the board of supervisors and the opinion of the state's bond attorney given in pursuance of order of the board referring the matter to him. Notice of this proceeding is published and the taxpayers, the parties or anyone of them, are given a day in court; if they choose, to appear and file objections the whole matter can thus be opened up and a judi-

cial investigation had. If no objection is filed, then they are forever precluded from raising objections in any court in this state.

Under the express terms of the Act of 1917, the chancellor was unquestionably required to dissolve the injunction which was granted here and dismiss the bill and unless the Bacot case is overruled and we see no reason but that the decree must be affirmed.

Smith, C. J., delivered the opinion of the court.

The appellant exhibited an original bill in the court below against the appellee, by which he seeks to enjoin the appellee from issuing bonds of supervisor's districts Nos. 1, 2, 3, and 4, of Grenada county, for the purpose of obtaining funds with which to build roads therein under the provisions of chapters 207 and 276, Laws of 1920.

The bill sets forth, *inter alia,* that the record of the appellee's proceedings in reference to the issuance of the bonds was submitted to and approved by the state bond attorney and a decree prepared by him was entered in the chancery court of Grenada county confirming and validating the bonds under the provisions of chapter 28, Laws of 1917. A demurrer interposed by the appellee to the bill of complaint was sustained, and an appeal to this court was granted to settle the principles of the case.

The alleged defects in the bonds relied on by counsel for the appellant for a reversal of the decree of the court below are: (1) That the county is without authority to issue such bonds at all, for the reason that they are neither county-wide bonds nor bonds of a separate road district; and (2) that the ballots used in the election held for the purpose of obtaining the consent of the qualified electors to the issuance of the bonds did not "have printed thereon a brief statement of the amount and purpose of the proposed bond issue," as required by section 2, chapter 207, Laws 1920.

Neither of these questions is now open for review, because of section 3, chapter 28, Laws Ex. Sess. 1917, which provides that—

"If the chancellor shall enter a decree confirming and validating said bonds and there shall be no appeal by either party from said decree, or if on appeal the supreme court enters its decree confirming and validating said bonds, the validity of said bonds so issued shall be forever conclusive against the county, municipality or district issuing same, and the validity of said bonds shall never be called in question in any court in this state."

This statute makes the validity of any bonds validated thereunder conclusive, and prevents them from being thereafter assailed, whether the alleged defect therein is the failure of the county, municipality, or district to comply with the provisions of the statute under which the bonds were issued, or is the absence of any authority in the county, municipality, or district to issue bonds in any event of the character of the bonds sought to be assailed or for the purpose for which they were issued.

The legislature has the unquestioned power to authorize the issuance of the bonds here in question; consequently it has the power to provide that they shall be valid, though issued without previous authority in the appellee so to do. *Bacot* v. *Board of Supervisors,* 86 So. 765.

Whether bonds which the legislature is without power to authorize counties, etc., to issue, can be validated under this statute, is not here involved, and will not be here decided.

The decree of the court below will be affirmed, and since no amendment that could be made to the bill would enable the appellant to maintain his suit the cause will not be remanded, but a final decree dismissing the bill will be rendered here.

*Affirmed, and bill dismissed.*