## MISSISSIPPI POWER & LIGHT CO. v. MEMPHIS NATURAL GAS CO.

### No. 11872.

Circuit Court of Appeals, Fifth Circuit.

June 23, 1947.

Rehearing Denied July 19, 1947.

Edwin R. Holmes, Jr., and Garner W. Green, both of Jackson, Miss., for appellant.

Edward P. Russell, of Memphis, Tenn., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

LEE, Circuit Judge.

Mississippi Power & Light Company, herein called "Mississippi," contracted to purchase its natural gas requirements from Memphis Natural Gas Company, herein called "Memphis," beginning January 2, 1929. Memphis transports and delivers gas from the Monroe field in Louisiana to Louisiana Power & Light Company, Arkansas Power & Light Company, Mississippi, West Tennessee Power & Light Company, and the Light, Gas and Water Division of the City of Memphis, for resale to consumers.

After the passage of the Natural Gas Act of 1938,[1] the contract between Mississippi and Memphis was filed with the Federal Power Commission in compliance with section 4(c) of the act. The contract contained the following provision after the rates were set forth:

"* * * It is understood and agreed that if at any time during the continuance of this agreement the Seller shall make any contract or contracts for the sale and delivery of gas to other than the Buyer at prices lower than the prices provided for in this Article Fourth for similar amounts of gas and under similar conditions, the Buyer shall be entitled to purchase gas hereunder at prices as favorable to the Buyer as the prices provided for in any such contract or contracts."

[1] 15 U.S.C.A. § 717 et seq., June 21, 1938, ch. 556, 52 Stat. 821.

An amendment to the contract on September 1, 1934, also filed with the Commission, changed the rates for gas purchased but left the foregoing "favored nation" clause intact. This contract, as amended, provided the only filed rate schedules for gas purchased by Mississippi for the period involved in this suit. On July 26, 1943, the Federal Power Commission implemented new rates for gas purchased and made the new rates applicable to all of Memphis' distributors. Prior thereto, Memphis and the Arkansas Power & Light Company had entered into a stipulation reducing the rates for gas sold by Memphis to Arkansas Power & Light Company, effective during the period from November 1, 1942, to July 26, 1943. Mississippi contends that it is entitled to these lower rates given by Memphis to Arkansas Power & Light Company, by reason of the "favored nation" clause quoted above. During the period from November 1, 1942, to July 26, 1943, these lower rates would have saved Mississippi $30,044.53. Memphis billed Mississippi at the rates provided in the September 1, 1934, contract, as amended, and Mississippi deducted $30,044.53 from the billings before payment. Memphis brought this suit for the $30,044.53.

Memphis also entered into an agreement, on March 13, 1939, with its distributor, the Light, Gas and Water Division of the City of Memphis, establishing a rate for gas delivered by Memphis to the city of Memphis. This contract was filed with the Commission on June 15, 1939, and the rates were effective June 27, 1939, to July 25, 1943. Mississippi now contends that it is entitled to the rates given by Memphis to the city of Memphis by reason of the same "favored nation" clause. These rates were lower than those in effect between Memphis and Arkansas Power & Light Company during the period from November 1, 1942, to July 26, 1943. During the period from July, 1939, to July 25, 1943, the rates set forth in the 1939 agreement between Memphis and the city of Memphis would have saved Mississippi $227,951. Defendant set forth its contention as to this $227,951 in its answer and amended it to counterclaim as to this amount on this appeal.

During the pendency of the suit in the court below, Mississippi, on April 11, 1945, filed with the Federal Power Commission a complaint to determine "the just and reasonable rate for gas delivered at the city gate by Memphis to Mississippi during the period from June 21, 1938, to July 26, 1943, fixing the same by order." The Commission ruled it was without authority to grant the relief requested because:

"(c) Section 5(a) of the Natural Gas Act authorizes the Commission after hearing to 'determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be *thereafter observed and in force,* and * * * fix the same by order.' (Emphasis supplied.)

"(d) During the period from June 21, 1938, to July 26, 1943, Mississippi filed no protest or complaint with the Commission with respect to the rates charged by Memphis for natural gas sold to Mississippi. During such period, the rates charged by Memphis were regularly on file with the Commission, and the Commission did not fix any rates or charges different from those prescribed in Memphis' rates schedules actually on file with the Commission.*

" *Section 54.2 of Part 54 of the Provisional Rules of Practice and Regulations under the Natural Gas Act provides: 'No natural gas company shall directly or indirectly demand, collect, or receive, for the transportation or sale of natural gas subject to the jurisdiction of the Commission, or for the lease or utilization of any facilities subject to the jurisdiction of the Commission, any rate or charge different from that prescribed in its rate schedule or scedules actually on file with the Commission, unless the Commission shall, for good cause shown otherwise provide by order.'"

The court below granted judgment for Memphis on the grounds that (1) the "favored nation" clause would give Mississippi no more than the right to use it as the basis for complaint to the Commission. (2) Memphis was under no obligation to ask the Commission to implement a rate to Mississippi already granted to another distributor of Memphis. (3) Until the Commission changed the rate, the contract rate

between Memphis and Mississippi was the lawfully promulgated rate.

On this appeal Mississippi urges that the lower court erred in these respects:

1. It ignored the deposition of Henry Sargeant wherein it was shown without contradiction not only that Mississippi and Arkansas were similarily situated, but that Mississippi was, if anything, more entitled to a rate reduction than was Arkansas, because of the fact that it was located nearer to the source of supply and used larger quantities of gas for domestic consumption.

2. It overlooked the facts as shown by the record that Mississippi did not know of the rate reduction to Arkansas until almost two months thereafter, and did not know all of the facts and circumstances surrounding such reductions until some time later; that it immediately protested and was assured by Memphis that its rates under the "favored nation" clause would be given due consideration, and it was requested by Memphis to defer action, pending the general rate investigation of the Memphis rate structure as a whole then in process by the Federal Power Commission.

3. It overlooked the fact that in its findings of fact and conclusions of law there were no findings that Mississippi and Arkansas were not similarly situated; that any such finding would have been contrary to the undisputed testimony; that the lower court arrived at its decision without regard as to whether these two companies were Buyers operating under similar conditions in accordance with the "favored nation" clause; that it was the court's conclusion that Mississippi should have taken this question to the Federal Power Commission, and that the court could not pass on it.

The argument of Mississippi fundamentally is that (1) the "favored nation" clause entitled Mississippi to a lower rate than was set forth in the contract, as amended, filed with the Federal Power Commission, and (2) the failure of Memphis to file a lower rate with the Commission entitled Mississippi to obtain by contractual recovery the advantages of the lower rate.

The "favored nation" clause became inoperative after the passage of the Natural Gas Act. Section 4 thereof provides: "* * * every natural-gas company shall file with the Commission * * * schedules showing all rates and charges for any transportation or sale * * *" and "no change shall be made by any natural-gas company in any such rate * * * except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping open for public inspection *new schedules* stating plainly the *change or changes* to be made in the schedule or schedules then in force and *the time when* the change or changes will go into effect." (Emphasis supplied.) While section 4 places the burden of filing a *new schedule* on the natural-gas company, its failure to act did not leave Mississippi, as a distributor of its gas, without a remedy. Section 5 of the same act provides: "Whenever the Commission, after a hearing had upon its own motion or *upon complaint of any * * * gas distributing company*, shall find that any rate * * * charged * * * by any natural-gas company * * * is unjust unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate * * *." (Emphasis supplied.) No matter how Mississippi may contort the effect of the "favored nation" clause, the act places upon the "gas distributing company," here Mississippi, or the Commission itself the power of instituting a hearing to determine whether a rate is proper under the terms of the act. Under section 5 the Commission may consider discrimination and preference in setting a rate. Rate-making is a legislative function that the courts will not interfere with, at least until the Commission has exercised the function.[2] To give effect to the "favored nation" clause would operate to transfer the legislative function of rate-making from the Commission to the courts. For the court to place a contractual duty

---

[2] Colorado Interstate Gas Co. v. Federal Power Commission, 324 U.S. 581, 589, 65 S.Ct. 829, 89 L.Ed. 1206; 43 Am Jur. pp. 722–723.

on Memphis to file a new rate schedule would be tantamount to forcing new rates on Memphis without permitting its recourse to the Commission.

■ Mississippi argues that, since the Commission has held it may not set retroactive rates, to require it to go before the Commission to obtain a lower rate in advance of deliveries would require it to have instantaneous knowledge of the lower rate extended by Memphis to another customer and would require the Commission to obtain immediate action. Congress has made certain provisions for these hardships, and supplication for further relief must be addressed to that body. Section 4 provides that unless the Commission orders otherwise a natural-gas company must give thirty days' notice to the public before it makes a change in a rate schedule. In absence of proof to the contrary we must assume Memphis complied with this provision or that the Federal Power Commission entered an interim order making the change in rate immediately effective under section 16 of the act.[3]

The judgment appealed from is affirmed.

[3] This the Commission may do. Hope Natural Gas Co. v. Federal Power Commission, 4 Cir., 1943, 134 F.2d 287, 311; reversed Federal Power Commission v. Hope Natural Gas Co., 1944, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333; and Federal Power Commission v. Natural Gas Pipeline Co., 1941, 315 U.S. 575, 585, 62 S.Ct. 736, 86 L.Ed. 1037.