UNITED GAS PIPE LINE CO. *v.* WILLMUT GAS & OIL CO.

No. 40521 October 21, 1957 97 So. 2d 530

*W. O. Crain, Wilkinson, Lewis & Wilkinson,* Shreveport, Louisiana; *Vinson, Elkins, Weems & Searls,* Houston, Texas; *Brunini, Everett, Grantham & Quinn,* Vicksburg; *Avery & Putnam,* Jackson, for appellant.

*Green, Green & Cheney,* Jackson; *E. J. Currie, Sr.,* and *E. J. Currie, Jr., Hannah, Simrall & Aultman,* Hatties-burg, for appellee.

708

GILLESPIE, J.

This suit was filed by Willmut Gas and Oil Company (Willmut), appellee, against United States Pipe Line Company (United), appellant, in the Chancery Court of Forrest County, Mississippi, for allegedly unjust, unlawful, excessive and discriminatory rates charged Willmut by United for natural gas sold and delivered for a six-year period ending June 20, 1953. The complainant prayed that the court "fix a just, reasonable, non-preferential and non-discriminatory rate for the intra-state gas delivered by United to complainant and award a decree to complainant for the difference between said sum so fixed and the amount actually paid by complainant."

Included in the answer of United was a motion to dismiss the original bill because the Federal Power Commission had full jurisdiction to regulate the rates involved and had assumed jurisdiction and adjudicated the questions. United also filed several pleas in bar. The motion to dismiss raised the question of whether the chancery court had any power or competence to hear and determine the question, and asserted that the fixing and regulation of the rates for the sale of natural gas involved was vested exclusively in the Federal Power Commission by the Natural Gas Act. Attached to the motion to dismiss and the pleas in bar were various proceedings had before the Federal Power Commission and the statement of facts next to be made is taken from these sources and from the bill of complaint.

Willmut moved to strike the motion to dismiss and demurred to the pleas in bar. A hearing was had on the

pleadings and the court overruled the motion of United to dismiss the cause and sustained demurrers to United's pleas in bar. An interlocutory appeal was granted by a member of this Court to settle the principles of the case. There is no dispute as to the facts pertinent to our decision.

United is a natural-gas company within the meaning of the Natural Gas Act, and the Federal Power Commission issued to United a certificate of public convenience and necessity for the establishment of certain interstate pipelines for the transportation of natural gas. Its operation extended from Texas through Louisiana into Mississippi and other States to the east. Willmut is a franchised distributor of natural gas to consumers in East Jackson, Rankin County, Mississippi, and in Hattiesburg, Forrest County, Mississippi, and towns and communities lying between those places. Prior to August 19, 1943, Willmut owned an eight-inch pipeline from East Jackson to Hattiesburg, and on that date it was taking delivery of natural gas at East Jackson and transporting the gas in its own transmission line to its several distribution points. All of the gas purchased as of that date by Willmut from United was produced either in Texas or Louisiana. On August 19, 1943, the Federal Power Commission issued to United a certificate of public convenience and necessity under the authority of which United purchased from Willmut the eight-inch transmission line running from East Jackson to Hattiesburg. Willmut retained all of its local distribution franchises and systems.

On August 20, 1943, United and Willmut entered into a contract under which United agreed to sell, and Willmut agreed to purchase, a sufficient quantity of natural gas for the latter to supply its customers for a period of 20 years. The contract provided for a rate of 25¢ per mcf for the first five years. Therafter the rate was either to be agreed upon by the parties or fixed by arbitration.

This contract was filed with the Federal Power Commission and accepted by the Commission as a rate schedule required by the Natural Gas Act. On January 8, 1947, United addressed a letter to Willmut stating that the matter of rates could not be submitted to arbitration because of the jurisdiction of the Federal Power Commission, and United stated that it intended to continue in effect the same price which was in effect on that date. This letter, and another whereby Willmut agreed to the 25¢ per mcf rate, was filed with and accepted by the Federal Power Commission as a rate schedule, and this has been the rate schedule on file with the Commission for the period involved in this suit.

On October 10, 1941, United contracted to deliver natural gas at Plant Eaton, located within one mile of Hattiesburg, of the same kind and quality as that sold and delivered to Willmut, at a rate of 11.5¢ per mcf. On August 5, 1947, United voluntarily put into effect a rate of 17.5¢ per mcf for natural gas of the same kind and quality as that sold and delivered to Willmut, for natural gas delivered to Mississippi Power & Light Company (now Mississippi Valley Gas Company) at Jackson, Mississippi, across Pearl River from East Jackson, Mississippi. These rates charged Plant Eaton and Mississippi Power & Light Company form the basis of the discrimination of which Willmut complains.

Until early in 1947, all of the natural gas sold and delivered to Willmut by United was transported from the States of Louisiana and Texas, and was therefore transported and sold in interstate commerce for resale. United's system included a network of pipelines in at least five states. Included in that system was the eight-inch transmission line running from East Jackson to Hattiesburg, formerly owned by Willmut, and another line running parallel thereto between East Jackson and Hattiesburg which was used in transporting natural gas to Mobile, Alabama. These two parallel lines between

East Jackson and Hattiesburg were connected in at least three places. There was a connection at or near East Jackson to United's Sterlington-Jackson eighteen-inch interstate line, the Jackson-Mobile sixteen-inch interstate line, a twelve-inch line from the Gwinville Gas Field located in Mississippi, and a ten-inch line running from near Collins, Mississippi to Bogalusa, Louisiana.

In the early part of the year 1947, United made certain system changes for the avowed purpose of restricting the passage and delivery to Willmut through the East Jackson-Hattiesburg line to intrastate gas. As a result of these changes, United effected a discontinuance of the flow of interstate gas into the East Jackson-Hattiesburg line, through which Willmut was served, except through the connecting link at or near the southern terminus. A relatively small amount of interstate gas flowed into the line serving Willmut after February 6, 1947. These system changes did not entirely discontinue the flow of interstate gas into the pipeline serving Willmut and a relatively small amount of interstate gas continued to commingle with locally produced gas into these pipelines. On seven occasions between February 6, 1947 and April 22, 1952, gas flowed from United's interstate lines into the East Jackson-Hattiesburg line - five times because of repairs on the latter line and on two other occasions for other reasons. At any time the pressure on the pipes from the Gwinville Field fell below the pressure on United's interstate line, interstate natural gas would flow into the pipelines supplying Willmut, and at all times there was some commingling of a relatively small amount of interstate gas with the locally produced gas supplied Willmut.

The system changes above referred to were made by United without approval of the Federal Power Commission as required under Section 7(b) of the Natural Gas Act (15 U.S.C.A., Sec. 717f(b)).

On March 16, 1948, Willmut filed with the Federal Power Commission an informal complaint, and a formal complaint on December 8, 1948. Therein Willmut invoked the jurisdiction of the Federal Power Commission and prayed for an order fixing a just and reasonable rate for natural gas sold and delivered by United to Willmut prior thereto and for the future and for an award for reparations for rates theretofore charged in excess of a just and reasonable rate. Willmut's complaint was, at its request, considered as an intervention in a general rate investigation of United initiated by the Federal Power Commission. Later it was separately heard and determined.

In that proceeding, Willmut contended that all of the natural gas sold to it by United was subject to the jurisdiction of the Federal Power Commission under the Natural Gas Act. After the hearing, the Federal Power Commission held that all the natural gas sold by United to Willmut was "in interstate commerce" so as to be subject to the provisions of the Natural Gas Act; that United had been charging Willmut a rate that was unjust, unreasonable, unduly discriminatory and preferential.

The Commission held that it did not have the power to award reparations for past discriminatory charges but that it did have power to make findings as to the lawfulness of past rates, but made no attempt to enforce its findings as to past rates. It is conceded that the Commission did not have the power to award reparations for excessive rates charged in the past. The Commission's order, entered June 1, 1953, required United to file a schedule of rates equal to those charged Mississippi Valley Gas Company (17.5¢ per mcf). It also required United to undo the system changes made in 1947 when United attempted to cut off from Willmut all but local gas. Neither party appealed from the Commission's order. The present suit was filed shortly after the Commision's order was entered.

It is contended by Willmut in the present suit that the court has power to award reparations for the excessive and discriminatory rates charged by United prior to the effective date of the Federal Power Commission's order requiring the rate to be reduced, but only as to that portion of the gas sold by United to Willmut which was produced, transported and sold in the State of Mississippi. Willmut concedes in its complaint in the present suit that because of the proceedings had before the Federal Power Commission, as to all interstate gas, the Court has no jurisdiction; but contends, in effect, that it can separate the intrastate gas from the interstate gas and recover in its common law action reparations for all excessive charges for intrastate gas made by Willmut prior to the reduction order by the Federal Power Commission.

Willmut states in its complaint that the suit is for the benefit of its customers, to whom it will refund the amount recovered after deducting all of its costs.

The Natural Gas Act defines a natural gas company as '' (6) 'Natural-gas company' means a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale.'' There is no contention that United is not a natural gas company within the meaning of the Natural Gas Act.

Section 7(b) prohibits a natural gas company from abandoning any portion of its facilities subject to the jurisdiction of the Commission or any service rendered by means of such facilities without first obtaining the permission and approval of the Commission.

The provisions of the Natural Gas Act ''shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or other use and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of

natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." Sec. 1, Natural Gas Act.

Section 4 of the Natural Gas Act provides for the filing of schedules with the Federal Power Commission showing all rates and charges for any transportation or sale of natural gas subject to the jurisdiction of the Commission, and it is provided in Section 4(d) "unless the Commission otherwise orders, no change shall be made by any natural gas company in any such rate, charge, classification, or service . . . . . except after 30 days notice to the Commission and to the public."

Section 5 of the Natural Gas Act vests jurisdiction in the Federal Power Commission to determine just and reasonable rates "to be thereafter observed and enforced."

Under the rule-making power vested in the Commission by the Act, the Commission adopted the following rule: "No natural-gas company shall directly or indirectly demand, collect, or receive, for the transportation or sale of natural gas subject to the jurisdiction of the commission, or for the lease or utilization of any facilities subject to the jurisdiction of the Commission, any rate or charge different from that prescribed in its rate schedule or schedules actually on file with the commission, unless the commission shall, for good cause shown, otherwise provide by order."

■■ ■ The first question for our decision is whether the Federal Power Commission had power to regulate the rates charged by United for natural gas sold Willmut, both as to that locally produced as well as that transported into the State.

United operated a unified system enterprise which was interstate in character. The pipeline employed to serve Willmut with natural gas was an integral part of United's interconnected interstate system, all of which was duly

certified by the Federal Power Commission. The unauthorized system changes made by United in 1947, which largely, but not entirely, restricted the flow of natural gas to Willmut to local gas produced at the Gwinville Field, was ineffectual insofar as the jurisdiction of the Federal Power Commission was concerned. In addition to the fact that some interstate gas continued to commingle with the local gas supplied Willmut, the natural gas transported from without the State was available at all times to completely or partially supply the natural gas requirements of Willmut when the locally produced gas became for any reason unavailable or insufficient; and the pipes were so connected that such flow of interstate gas would automatically take place. There was but one sale by United to Willmut under one contract covering all gas sold and delivered at one price schedule which was on file with the Federal Power Commission. The commingled natural gas thus sold and delivered to Willmut was "in interstate commerce" subject to the regulating power of the Federal Power Commission. Pennsylvania Water & Power Co. v. Federal Power Commission, 343 U. S. 414, 96 L. Ed. 1042, 72 S. Ct. 843; Connecticut Light & Power Co. v. Federal Power Commission, 324 U. S. 515, 89 L. Ed. 1150, 65 S. Ct. 749; Wisconsin-Michigan Power Co. v. Federal Power Commission, 197 F. 2d 472 (CCA 7.) And at Willmut's request the Federal Power Commission did assert its power over the entire sale of natural gas to Willmut.

 ██ The second question is whether Willmut can maintain a common law action for the recovery of the difference between the discriminatory rate charged by United and a just and reasonable and non-discriminatory rate for that part of the natural gas sold which was produced, transported and sold in the State of Mississippi. Willmut contends that since the Federal Power Commission had no power to award reparations for past charges, and could only require United to file a rate schedule

thereafter to be charged, that the sovereignty of the State to apply its common law and award reparations was not abrogated by the Natural Gas Act. In effect, Willmut contends that the matter of reparations was a field left open by Congress when it failed to give the Federal Power Commission power to award reparations for past charges.

We have concluded that all of the natural gas sold Willmut was subject to the jurisdiction of the Federal Power Commission; thus it was all "in interstate commerce" as far as this second question is concerned. ■ The problem is whether it is open for the courts to determine what the reasonable rates during the period prior to the Federal Power Commission's order should have been. The Supreme Court of the United States said in Montana-Dakota Utilities Co. v. Northwestern Public service Co., 95 L. Ed. 912, 341 U. S. 246:

"Petitioner cannot separate what Congress has joined together. It cannot litigate in a judicial forum its general right to a reasonable rate, ignoring the qualification that it shall be made specific only by exercise of the Commission's judgment, in which there is some considerable element of discretion. It can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission, and not even a court can authorize commerce in the commodity on other terms. ■ ■ "We hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable."

■ ■ The power of the Federal Power Commission to regulate the price paid for natural gas transported and sold for resale in interstate commerce is exclusive and such price is not subject to state regulation. Natural Gas Pipeline Co. of America v. Panoma Corp., et al., 99 L.

Ed. 866, 349 U. S. 44. In Mississippi Power & Light Company v. Memphis Natural Gas Co., 162 F.2d 388 (CCA 5), Mississippi was entiled under its contract with Memphis to a reduction in rates. But Mississippi did not request the Federal Power Commission to require Memphis to file a new rate schedule to operate prospectively. Thereafter Mississippi filed suit to recover on its contract. It was held that under the Natural Gas Act rate making is a legislative function vested by Congress in the Federal Power Commission, and that to give effect to the clause in the contract reducing the rate as to past charges would operate to transfer the legislative function of rate making from the Commission to the courts. In denying the right of Mississippi to recover, the Court held that the contract clause (entitling Mississippi to a reduced rate) became inoperative after passage of the Natural Gas Act. ■■■ The effect of the decision in the Mississippi case is that the rate schedule on file with the Federal Power Commission is the only lawful rate insofar as past rates are concerned. Cf. Glassburg v. Boyd, 116 Atl. 2d 711.

■■■ When a sale of natural gas is subject to the power of the Federal Power Commission, or when the Commission exercises its power in a case where it has discretion, (cf. Conn. Power & Light Co. v. Federal Power Commission, supra) its jurisdiction is full and exclusive. It is not for a court to say whether Congress gave the Federal Power Commission too much or too little power over the subject of rate regulation, or whether the remedy afforded a party in a given case is complete or inadequate, measured by judicial standards.

The jurisdiction of the Federal Power Commission having attached to all natural gas sold to Willmut, there is no residual jurisdiction for independent court action. The local component lost its intrastate character and there remained no power in the courts to apply the common law of the State.

■■ The chancery court erred in not sustaining the motion to dismiss the bill for want of jurisdiction to determine the issues presented, and its order is therefore reversed. On interlocutory appeal we ordinarily remand the case to the trial court, but in this case no additional or amended pleading could enable Willmut to maintain its suit. It would serve no purpose to remand the cause, and final judgment will be rendered here dismissing the bill. Parker v. Board of Supervisors, 125 Miss. 617, 88 So. 172.

Reversed and bill dismissed.

All Justices concur.

## ON SUGGESTION OF ERROR

February 24, 1958 100 So. 2d 609

HALL, J., dissenting.

The suggestion of error in this case is directed solely to the action of the Court in entering a final judgment, which point is covered only in the last paragraph of the opinion originally entered herein which has been reported in 97 So. 2d 530,536, and I respectfully dissent from the action of the Court in overruling the suggestion of error.

It must be remembered that the lower court decided this case on a motion filed by United to dismiss the bill, which motion was overruled, and this Court reversed that action holding that the motion should have been sustained, but the Court went further and instead of remanding the cause, it rendered a final judgment without giving Willmut an opportunity to amend its bill in an effort to obviate the holding of this Court. The case was never tried on the merits and the result is that this Court has entered a final judgment against the original complainant without any hearing on the merits. This is contrary to every concept of fairness and justice and contrary to what this Court said in the case of Ascher & Baxter v. Moyse & Company, 101 Miss. 36, 56, 57 So. 299:

"The lower court declined to enter into a consideration of the merits, but dismissed the bill solely upon the ground that the complainants did not have the right to sue, upon the idea that the provisions of the Code of 1906 were repealed by the act of 1908. This court is strictly a court of review, and it is only in rare instances where the court will consider the merits of any controversy, unless passed upon in the lower court. Thompson v. Bank, 85 Miss. 261, 37 South. 645; Edwards v. Lumber Co., 92 Miss. 598, 46 South 69. A moment's reflection will at once demonstrate the soundness of this rule. The parties to any litigation have the right to have matters of fact submitted to and passed upon by the jury or the chancellor, in whatever forum the cause is being tried, and the finding of facts in the court below by the proper authority will not be disturbed in this court unless it is manifestly wrong. The opportunities afforded to the lower court are so much better for the correct conclusions and findings upon all questions of fact than is this court. Here we have nothing but the naked record before us; there, in most cases, the parties themselves are in the presence of the court and testifying. The manner of testifying, and their appearance upon the witness stand, and many other things, are influential in determining the triers of fact."

The holding of the majority is also contrary to what was said in Town of Utica v. State, ex rel. Rice, Attorney General, 166 Miss. 565, 579, 148 So. 635, on suggestion of error as follows: "On a former day of this term the judgment of the court below in this cause was reversed, and the cause was remanded to the circuit court for trial de novo. The appellant now suggests that upon reversal of the judgment of the circuit court a final judgment in its favor should have been entered in this court. This exact point was recently decided adversely to appellant's contention in the case of McIntosh v. Munson Road Machinery Co. (Miss.), 145 So. 731; and consequently the

suggestion of error, or motion to correct the judgment as it is erroneously styled, must be overruled.''

It is also contrary to what was said by Judge Griffith in the case of Brock, State Bank Commissioner v. Adler, 180 Miss. 126, 128, 178 So. 593, as follows: ''Much as we sympathize with appellee as a result of the decision in Adler v. Interstate Trust & Banking Co., 166 Miss. 215, 146 So. 107, 87 A. L. R. 347, followed in the opinion delivered on December 13, 1937, 177 So. 523, we are bound to hold now that the controversy is at an end on its merits. We remanded the case that the trial court might adjudicate the damages on the injunction. Appellant now appears and expressly waives any claim for damages; and upon that basis a final decree will be entered here for appellant—but expressly disallowing damages for the wrongful issuance of the writ of injunction. Otherwise we could not enter any final decree as appellant has requested us to do.''

Willmut proposes certain allegations which it might make in the amendment which it desires to make and sets out these allegations in detail at pp. 17, 43 and 44, of its suggestion of error. There are many thousands of people indirectly interested in this case and over a million dollars is sued for, and I feel that in view of the number of people involved and the amount involved Willmut is entitled to its day in court and should not be kicked out on a final judgment based upon the pleadings.