UNITED GAS PIPE LINE COMPANY *v.* MISSISSIPPI PUBLIC
SERVICE COMMISSION

No. 41942 October 9, 1961 133 So. 2d 521

*W. O. Crain,* Shreveport, La.; *Brunini, Everett, Grantham & Quin,* Jackson and Vicksburg; *G. P. Hewes, III,* Jackson, for appellant.

II. The arbitrary issuance of the Show Cause Order without notice and without hearing violated due process.

*Joe T. Patterson,* Attorney General by *Wade Creek-more,* Asst. Atty. Gen., Jackson, for appellee, Mississippi Public Service Commission; *Wise, Smith & Carter,* Jackson, for appellee, Mississippi Power & Light Company; *Eaton, Cottrell & Galloway,* Gulfport, for appellee, Mississippi Power Company; *Green, Green & Cheney,* Jack-

son, for appellee, Willmut Gas & Oil Company; *Overstreet, Kuykendall, Perry & Phillips,* Jackson, for appellee, Mississippi Valley Gas Company.

*Currie & Currie, Simrall, Aultman & Pope,* Hatties-
burg; *Green, Green & Cheney,* Jackson, for appellee, Will-
mut Gas & Oil Company.

Lee, P. J.

The principles, which govern in case No. 41,937, Texas Gas Transmission Corporation v. Mississippi Public Service Commission, et al., this day decided, also apply in this case.

This litigation arose out of the effort of the Mississippi Public Service Commission to hold the United Gas Pipe Line Company liable for its alleged pro rata share of the expense of regulating utilities for the years 1956 and 1957, agreeably to a tax levied for that purpose by Sec. 36, Chap. 372, Laws of 1956, Sec. 7716-36, Code of 1942, Rec. On appeal, the Chancery Court of Hinds County affirmed the order of the Commission in adjudging the Company to be liable for the tax. From the decree entered, the Pipe Line Company appealed.

United Gas Pipe Line Company, duly certificated by the Federal Power Commission, was engaged in the purchase, transportation and sale of natural gas at wholesale.

It collected the gas in states west of Mississippi, commingled it with gas produced and gathered in this state, furnished it to customers in this state, and delivered the same also to other states to the east. It also sold this product direct to large industrial customers. At the time of the trial, it had nineteen of such customers in the state. These sales were not made or intended for resale. The Company is a subsidiary of United Gas Corporation, which operates on a resale or distribution basis in various towns and cities of the state, making both direct industrial as well as residential and commercial sales.

The direct industrial sales by the Company were made under contracts with its customers. The lines were so interlinked that gas, gathered in this state, was, or might have been, mixed and commingled with gas from other states. Service was furnished to customers by means of smaller taps on main or connecting lines. The Company placed meters at each point of delivery. These meters, or charts collected therefrom, were read periodically by employees of the Company from the Jackson office, or other persons working for the Company. The information was sent to the Jackson office, and bills were there prepared and mailed to the customers for payment. The facilities, which served these industrial customers, were maintained by employees, who operated out of the Jackson office and elsewhere.

These direct sales to industrial customers were clearly interstate commerce. Panhandle E. P. Line Co. v. Michigan Public Service Commission, 341 U. S. 329, 95 L. Ed. 993; Panhandle E. P. Line Co. v. Public Service Commission of Indiana, 332 U. S. 507, 92 L. Ed. 128, 68 S. Ct. 190; State of Missouri ex rel Barrett v. Kansas Natural Gas Co., 265 U. S. 298, 68 L. Ed. 1027, 44 S. Ct. 544; Commonwealth of Pennsylvania v. State of West Virginia, 262 U. S. 553, 67 L. Ed. 1117, 43 S. Ct. 658; Pennsylvania Gas Co. v. Public Service Commission, 252 U. S. 23, 64 L. Ed. 434, 40 S. Ct. 279. Compare also McKeigney

v. Dunn Brothers, 224 Miss. 762, 80 So. 2d 802, 81 So. 2d 712.

With reference to the proposition that gas, transported interstate, takes on the character of a commodity which has come to rest or broken bulk when it leaves the main transmission line and, under reduced pressure, enters branch lines or laterals on its way to final distribution or consumption, it is sufficient to say that such an incident to the transmission does not vitiate its interstate character. In the case of Panhandle v. Indiana, supra, the Supreme Court of the United States said that "those merely mechanical considerations are no longer effective, if ever they were exclusively, to determine for regulatory purposes the interstate or intrastate character of the continuous movement and resulting sales * * *."

But there is no doubt as to the right and power of the state to regulate direct sales to industrial consumers even though the gas is transmitted in interstate commerce. Section 1 (b) of the Natural Gas Act, 15 U. S. C. A., Sec. 717 (b), says: "The provisions of this act shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, *but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.*" (Emphasis supplied.)

In the Indiana statutes, a public utility, subject to the control of the public service commission, was defined as follows: "Every corporation * * * that now or hereafter may own, operate, manage or control any * * * plant or equipment * * * for the * * * transmission, delivery or furnishing of heat, light, water or power * * * either directly or indirectly to or for the public * * *." Section 54-105, Burns' 1933. Chapter 53, page 110, Acts of 1945,

added an additional section to the Indiana Public Service Commission Act aimed directly at the natural gas business. It defined a "gas utility" to mean and include "any public utility selling or proposing to sell or furnish gas directly to any consumer or consumers within the State of Indiana for his, its or their domestic, commercial or industrial use." See Public Service Commission v. Panhandle E. P. Line Co., 71 N. E. 2d 117, 127.

The Supreme Court of the United States, again in the Panhandle v. Indiana case, supra, had under consideration the Indiana statutes, as set out above. It construed Sec. 1 (b) of the Natural Gas Act, supra, and held that Indiana's Commission, under those statutes, was "competent to regulate the sales", which, in that case, were made direct to the consumer for industrial purposes. The opinion went on to say that Sec. 1 (b) of the Natural Gas Act, supra, " * * * determines the Act's coverage and does so in the light of the situation existing at the time. Three things and three only Congress drew within its own regulatory power, delegated by the Act to its agent, the Federal Power Commission. These were : (1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale.

"The omission of any reference to other sales, that is, to direct sales for consumptive use, in the affirmative declaration of coverage was not inadvertent. It was deliberate. For Congress made sure its intent could not be mistaken by adding the explicit prohibition that the Act 'shall not apply to any other * * * sale * * * .' (Emphasis added.) Those words plainly mean that the Act shall not apply to any sales other than sales 'for resale for ultimate public consumption for domestic, commercial, industrial, or any other use.' Direct sales for consumptive use of whatever sort were excluded."

The foregoing opinion also pointed out that, by this exclusion, Congress had recognized "the vital interests

of the states and their people, consumers and industry alike, in the regulation of rates and service. * * *." See also Federal Power Commission v. Panhandle E. P. Line Co., 337 U. S. 498, 93 L. Ed. 1499. See also Panhandle E. P. Line Co. v. Michigan Public Service Commission, supra, where the Michigan statute had provided that no utility should render service in a municipality already served by another utility, except on certificate of public convenience and necessity first obtained from the public service commission.

The question for determination is not whether the state has the power to regulate such sales, but whether the legislature delegated that power to the public service commission.

The appellees' contention, among other things, is that the legislature intended to subject direct industrial gas sales whether by interstate pipe line companies or otherwise, to the jurisdiction of the Commission. They take the position that (1) at the time of the passage of this Act, there was an express attempt to exempt direct industrial sales of gas from the jurisdiction of the Commission; that this proposed exemption was contained in the committee substitute to the original bill; but that, on consideration by the House of Representatives, the exemption, proposed in the committee substitute, was stricken. They further say that (2) Sec. 4 of the Act specifies the general jurisdiction and powers of the Commission "over * * * the intrastate business and property of public utilities as herein defined * * *" and that the Legislature purposefully used those words to exclude that which is regulated by federal authorities. They also maintain (3) that Sec. 5 prohibits any person from constructing, etc. * * * gas * * * "for any intrastate sale, to or for the public for compensation * * *" without first having obtained a certificate, etc.; and that the use of the term "intrastate sale", therein was for the purpose of requiring a state certificate only for the facilities dedicated to, and necessary for, a sale not regulated by federal authorities.

■■ It must be kept in mind that the Legislature, by Chap. 372, Laws of 1956, Sec. 7716-01, et seq., Code of 1942, Rec., created the Public Service Commission and prescribed its powers and duties as to the regulation of certain utilities. It amended Sec. 139, Chap. 491, Laws of 1950, by transferring in part the rate making power therein provided. Obviously the Commission has only such powers and duties as have been delegated to it. This is such an elementary principle as to need no citation of authority.

The appellant in this case is a public utility.

Section 7716-01D (2) provides in part as follows:

"D. The term 'public utility,' when used in this act, includes persons and corporations, or their lessees, trustees and receivers now or hereafter owning or operating in this state equipment or facilities for:
\* \* \*

"(2) The transmission, sale, sale for resale, or distribution of natural, artificial, or mixed natural and artificial gas to the public for compensation by means of transportation, transmission, or distribution facilities and equipment located within this state, but shall not include the production and gathering of natural gas, the sale of natural gas in or within the vicinity of the field where produced, nor the distribution or sale of liquefied petroleum gas."

The general jurisdiction and powers of the commission are set out in the applicable part of Sec. 7716-04 as follows: "Subject to the limitations imposed in this act, and in accordance with the provisions hereof *the commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities* as herein defined, except and provided, \* \* \*," which exceptions thereafter contained are immaterial here. (Emphasis supplied.)

As to the necessity for obtaining a certificate of public convenience and necessity, Sec. 7716-05 provides, in part, as follows: "No person shall construct, \* \* \* equipment

for * * * transmitting or distributing * * * gas, * * *, for *any intrastate sale, * * *"*, without having obtained from the commission a certificate of public convenience and necessity. (Emphasis supplied.)

The applicable part of Sec. 7716-09, with reference to rate schedules, is as follows: "Under such reasonable rules and regulations as the commission may prescribe, *every public utility, the rates of which are subject to regulation under the provisions of this act,* shall file with the commission, within such time and in such form as the commission may designate, schedules showing all rates and charges established by it and collected and enforced, or to be collected or enforced within the jurisdiction of the commission. * * *." (Emphasis supplied.)

In regard to the expenses to be taxed against utilities to enable their regulation by the commission, Sec. 7716-36 provides, in part, as follows: "All reasonable and necessary expenses of the administration of the duties imposed on the commission by this act, including the salaries of personnel authorized under section 2 (Sec. 7716-02) of this act, but not including the salaries of the commissioners, shall be provided as follows: There is hereby levied a tax upon all utilities, *the rates of which are subject to regulation by the provisions of this act, * * *"*, followed by the detailed method to be used for that purpose and immaterial here, except to point out that the levy is to be made, according to the gross revenue of the utility, which term is defined therein as follows: "The term 'gross revenue' as used in this section shall be deemed to be the total amount of all revenue derived by each of such utilities from its *intrastate* operation, * * *." (Emphasis supplied.)

The gathering into appellant's transportation system of gas, produced in this state, did not change the interstate character of the transportation or sales. In United Gas Pipe Line Co. v. Willmut Gas and Oil, 231 Miss. 700, 97 So. 2d 530, under a similar operation, this Court said:

"United operated a unified system enterprise which was interstate in character."

■■■ The terms "interstate" and "intrastate", from their long-continued use, now have common acceptations. The preposition "inter", as a prefix, means "among" or "between", whereas the preposition "intra", as a prefix, means "within". Webster's New International Dictionary, Second Edition. Thus commerce between two or more states is interstate, and commerce exclusively within one state is intrastate.

■■■ This Court can take judicial knowledge that, in every Legislature, there have been many learned members. Some have been outstanding lawyers. With the well-known difference between the meaning of "interstate" and "intrastate" commerce, it would be a reflection on the intelligence of the Legislature for this Court to accede to the contention of appellees and thereby proclaim to the world that the Legislature did not know the difference in the meaning of those two words. It must have known what it was doing. If it had intended to vest the Commission with power to regulate direct sales in interstate commerce for industrial purposes, undoubtedly it would not have given the Commission original exclusive jurisdiction merely "over the intrastate business and property of public utilities". (Sec. 7716-04, supra.) Rather the Legislature would have granted to the Commission the power to regulate direct sales of gas in interstate for industrial purposes, or it would have vested the Commission with power to regulate all direct sales for industrial purposes not reserved by Congress or vested by it in the Federal Power Commission, or other federal agency or authority.

This Court cannot hold, therefore, that, because of the deletion by the House of an amendment to the original act to exempt utilities from such sales, the Legislature thereby vested or intended to vest the Commission with full power and authority to regulate such utilities except

insofar as may have been reserved by the Congress of the United States.

 It is clear therefore that, while the Legislature had the power to vest the Public Service Commission with full authority to regulate direct industrial sales of gas, as involved here, it in fact did not delegate such power and authority to the Commission. It follows that, since the Commission was without power and authority so to do, it had no right to levy a tax for regulation, as provided by Sec. 7716-36, supra, or to make the order appealed from.

Consequently, the cause is reversed, the order of the Commission is set aside, and a decree will be entered here for the appellant.

Reversed and decree here for the appellant.

*Kyle, Gillespie, McElroy* and *Jones, JJ.,* concur.