460 So.2d 107 (1984)
MISSISSIPPI POWER & LIGHT COMPANY
v.
Louis A. CONERLY, et al.
No. 55641.
Supreme Court of Mississippi.
October 10, 1984.
As Modified on Denial of Rehearing December 12, 1984.
*108 Charles T. Ozier, F. Hall Bailey, Wise, Carter, Child & Caraway, Jackson, Keith Starrett, Starrett & Honea, Magnolia, for appellant.
Delos H. Burks, Stewart, Burks, Pace & Carroll, Picayune, for appellees.
Before BOWLING, HAWKINS and SULLIVAN, JJ.
BOWLING, Justice, for the Court:
This appeal involves proceedings in a Special Court of Eminent Domain of Walthall County, Mississippi, Circuit Judge Joe N. Pigott presiding, according to applicable eminent domain statutes. Appellant, Mississippi Power & Light Company (MP&L) appeals from an order of the circuit judge dismissing its petitions for condemnation of land attempted to be secured for construction of a high voltage electric transmission line. The appeal brings four consolidated condemnation suits and involves four separate pieces of property owned by appellees. The principle issue is whether or not the trial judge had sufficient basis to dismiss the condemnation petitions. We hold that he did and we affirm his orders.
In 1981 appellant MP&L decided to construct a 500 kilovolt (Kv) transmission line from its substation in Franklin County, Mississippi, known as the "Franklin Substation" to a point on the Mississippi-Louisiana line. The Louisiana Power & Light Company (LP&L) was then to continue the high voltage line to Bogalusa, Louisiana and eventually to the Eastern New Orleans electrical distribution point solely owned and operated by LP&L. Already constructed is a 500 Kv line from the new Grand Gulf nuclear energy plant in Mississippi to the Franklin Substation. The proposed new line of fifty-one miles from that station to the Louisiana line would continue the high power line so that it would carry electricity from the Grand Gulf plant into Bogalusa and from there, eventually, to New Orleans.
Prior to the attempt to secure the right of way for the fifty-one mile high voltage line, MP&L applied for a certificate of public convenience and necessity from the Mississippi Public Service Commission (MPSC), as was required by the provisions of Mississippi Code Annotated, Section 77-3-11 (1972), which reads in pertinent part as follows:
(1) No person shall construct, acquire, extend or operate equipment for manufacture, mixing, generating, transmitting or distributing natural or manufactured gas, or mixed gas, or electricity, or water, for any intrastate sale to or for the public for compensation, or for the operation of a public utility operating a business and equipment or facilities as contemplated by subparagraph (3) of paragraph (d) of section 77-3-3, without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require the operation of such equipment or facility.
On October 20, 1981, the MPSC issued its "Order Granting Certificate of Public Convenience and Necessity." Pursuant to this permission, appellant MP&L proceeded to acquire the right-of-way for the fifty-one mile high voltage line. Under this procedure, set up by the legislature, everything would have gone smoothly had all affected landowners and MP&L agreed on the sale and purchase of the right-of-way. This effort, however, was interferred with when the four sets of property owners involved in this appeal would not agree on a purchase and sale of their property for the electrical power line.
The next step in the cause was the filing by appellant MP&L of four petitions for condemnation in the Special Court of Eminent Domain, under the provisions of MCA § 11-27-1, et seq. (1972). The particular section granting MP&L authority to file the condemnation proceedings is MCA § 11-27-47, which gives eminent domain rights to all companies
... organized for the purpose of building or constructing pipelines and appliances for the conveying and distribution of oil or gas or for the purpose of constructing, *109 maintaining and operating lines for transmitting electricity for lighting, heating and power purposes, or for the purpose of constructing, maintaining and operating lines and appliances for storing, transmitting and distributing water and for transmitting, treating and disposing of sewage, are hereby empowered to exercise the right of eminent domain... .
The condemnation petitions all had attached thereto as an exhibit, and made a part of the petition, the hereinbefore mentioned order of the MPSC.
The appellees filed their motions to dismiss the condemnation proceedings under the provisions of MCA § 11-27-15, which provides in part as follows:
Any defendant may, not less than five (5) days prior to the date fixed for the hearing of the petition and in the same court where the petition is pending, file a motion to dismiss the petition on any of the following grounds: (1) that the petitioner seeking to exercise the right of eminent domain is not, in character, such a corporation, association, district or other legal entity as is entitled to the right; (2) that there is no public necessity for the taking of the particular property or a part thereof which it is proposed to condemn; or (3) that the contemplated use alleged to be a public use is not in law a public use for which private property may be taken or damaged. Any such motion, if filed, shall be heard and decided by the judge as a preference proceeding, without a jury, prior to the hearing on the petition.
In addition to the above set out statutory grounds for dismissal of the condemnation petitions, appellees contended that the real purpose for the construction of the high voltage line was for interconnection of the corporate utility entities owned solely by Middle South Utility System. These entities are MP&L, LP&L, Arkansas Power & Light (AP&L) and New Orleans Public Service, Inc. (NOPSI). Appellees alleged that this proposed construction was not an intrastate operation subject to being under the jurisdiction of the MPSC. The petitions for dismissal contended that the scheme for constructing the high voltage line was to carry electricity interstate from Grand Gulf Generating Plant to LP&L facilities. Appellees contend that the allegation by appellant of incidental benefit to MP&L customers is a masquerade to justify constructing the interconnecting high power line. Appellees contend that the line was not for public use or public necessity as those terms apply to the utility and its consumers in the State of Mississippi. Contention is made by appellees that the purpose of the line is "interstate" rather than "intrastate", as was stated in the MPSC order attached and made a part of the condemnation proceedings.
After an evidentiary hearing consisting of testimony from the director of engineering office of appellant, interrogatories and answers thereto, requests for admissions, stipulations and documents, such as corporate minutes, the circuit judge heading the Special Eminent Domain Court dismissed all four condemnation proceedings and the condemnor MP&L appeals here as a preference case.
The order dismissing appellant's petitions recites what we hereinafter shall discuss as material findings of fact. Unlike other judicial proceedings, the Special Court of Eminent Domain results in the circuit judge [in counties where there is no county court] being the finder of facts in determining whether or not the condemnation petitions should be dismissed under the hereinbefore quoted MCA § 11-27-15 (1972).
The lower court's order in its finding of facts on material issues, found:
It is conceded that no Mississippi customer would be served off of the transmission line in question and that the line would be used solely to transmit electric current from the Franklin EHV sub-station to Louisiana Power & Light Co. It is admitted that the Mississippi Public Service Commission will not have jurisdiction to establish or approve rates for sale of electricity interstate to Louisiana Power & Light Co.

*110 Petitioner is proceeding under MCA § 11-27-47 (1972), which provides, in part, that such companies are hereby empowered to exercise the right of eminent domain. Mississippi Constitution, Article 3, Section 17 (1890) provides in part that: "The question whether the contemplated use be public shall be a judicial question and as such, determined without regard to legislative assertions that the use is public... ." The legislative delegation of authority and jurisdiction to the Mississippi Public Service Commission, Section 77-3-5 Code of 1972, provides:
Subject to the limitations imposed in this article and in accordance with the provisions hereof, the public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities.
The primary stated purpose of the proposed 500 Kv line is to transmit electrical energy from Franklin County, Mississippi, to Louisiana Power & Light Company in the State of Louisiana, near Bogalusa, Louisiana, and ultimately to be extended by LP&L to the eastern part of New Orleans, Louisiana. Not one Mississippi customer is to be served by the proposed transmission line. The rates to be charged for electrical power transmitted by the line will not be within the jurisdiction of the Mississippi Public Service Commission, but will be fixed by the Federal Energy Regulatory Commission.
The order further states:
The authority of the Mississippi Public Service Commission to regulate rates is limited by the express language of the statute (Section 77-3-5) to intrastate business. The sale of electric power from Mississippi Power & Light Co. to the Louisiana Power & Light Co. is an interstate sale.
Appellant contends that the judicially composed Special Eminent Domain Court was obligated to follow the MPSC's order authorizing the construction of the "intrastate line." Appellant further contends that under the applicable statute, MCA § 77-3-67 (1972), appellees were barred from securing a dismissal of the condemnation proceedings as they did not within thirty days of the MPSC's original order, appeal that order to the Chancery Court of Hinds County. The disposal of this argument is easy. MCA § 77-3-47 (1972), providing for notice of the commission's hearing such matters as that requested by appellant states that "notice of all such hearings shall be given the persons interested therein by mailing such notice to each public utility which may be affected by any order resulting therefrom and by publication in a newspaper of general circulation published in Jackson, Mississippi." Admittedly, appellee landowners in Walthall County received no notice of the "hearing" before the MPSC, had no actual notice and therefore certainly would not know to appeal any such order within thirty days to the Chancery Court of Hinds County. It does not take a constitutional scholar to find that the requiring of these appellees to appeal an order affecting them and about which they had absolutely no notice or knowledge, is contrary to the due process requirements of either the state or federal constitutions. See Schroeder v. New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); and Walker v. Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956).
The first notice received by appellees was the summons from the Special Court of Eminent Domain brought about by appellant filing its petitions for condemnation.
Before going further, we need to note the provisions of Mississippi Constitution, Article 3, Section 17 (1890), as follows:
Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question and, as such, determined without regard to *111 legislative assertion that the use is public.
Obviously, in obedience to the above quoted constitutional provision, the legislature in 1971 enacted the hereinbefore set out MCA § 11-27-15 (1972), which affirmatively gave the Special Court of Eminent Domain the power to dismiss the condemnation petitions for certain reasons, particularly, if the court found that there was "no public necessity" for the taking or that the "use alleged to be a public use is not in law a public use for which private property may be taken or damaged."
The MPSC is an arm of the legislature and understandably and properly oversees the actions of the utility companies in order to safeguard the rights of the people of this State. It certainly is commendable to require that the MPSC give its permission to the utility company before the latter proceeds to build its lines. The MPSC however only has jurisdiction within the State of Mississippi in such matters, and consequently, has the duty to control and regulate "intrastate" utility activities. The ballgame was switched to a different field when appellant filed its condemnation proceedings in the judicial Special Eminent Domain Court. Even though appellant in its request is relying on the previous MPSC order, appellant admits that it is a prerogative of the eminent domain court judge to evaluate facts in deciding whether he should legally dismiss the condemnation proceedings.
As the proceedings have reached judicial proportions, there are certain elemental principles involved. Among them being, as said by this Court in Wise v. Yazoo City, 96 Miss. 507, 51 So. 453 (1910):
"No power conferred on any corporation, either private or municipal, is to be more strictly construed than the power to exercise the right of eminent domain." ... "The power of eminent domain being in derogation of the common right, acts conferring it are to be strictly construed, and are not to be extended beyond their plain provisions. The right to exercise the power is strictly limited to the purposes specified in the statute conferring it. The proposed use of the lands of the owner must be clearly embraced within the legitimate object of the power conferred. Where there is any doubt in regard to the extent of the power, the landowner must have the benefit of that doubt."
This Court recently has held that it is a general rule of statutory construction that where there is doubt of the right to exercise the power of eminent domain, the statutes will be strictly construed most favorably to the land owner. Roberts v. Mississippi State Highway Commission, 309 So.2d 156 (1975); Berry v. Southern Pine Electrical Power Association, 222 Miss. 260, 76 So.2d 212 (1954); and Ferguson v. Board of Supervisors, 149 Miss. 623, 115 So. 779 (1928).
We need now to look at the facts before the fact finder, Judge Pigott, at the time he sustained appellee's motion to dismiss.
The origination of the high voltage line in Mississippi is shown in the minutes of the operating committee of Middle South Utilities System. Portions of these minutes are as follows:
The recognition of the necessity of increasing the Middle South System transmission capacity between the south and the north based on the System Planning Committee reports of September 3, 1980 and December 3, 1980, the Operating Committee unanimously adopted the Planning Committee recommendations which are listed as follows:
1. The proper northern termination of a 500 Kv line from the East Orleans Energy Center is the Franklin 500 Kv switchyard of MP&L. Further, the bus at Franklin should not be split.
2. A switching station with a 500/230 Kv autotransformer should be constructed at Bogalusa.
3. The generating units at the East Orleans Energy Center should be connected directly to the 230 Kv system rather than directly to the 500 Kv system.

*112 The Operating Committee recognizes that in addition to providing the necessary capability, the major advantage of the eastern route is its geographic separation from the existing Middle South System south-north transmission. The proposed line minimizes the probability of simulatneous transmission outages caused by natural disasters. Additionally, this route will provide strengthening of the transmission system in the Bogalusa and southern MP&L areas.
Attached to the minutes is the following statement in regard to the line in question:
PURPOSE AND NECESSITY
Middle South System studies have shown the need for a 500 KV line to the Eastern part of New Orleans. The Franklin EHV Substation was found to be the proper northern terminal of that line. This authorization is for the Miss. Power & Light Company portion of the Franklin -East New Orleans and southern MSU System and will be a part of the transmission needed to distribute power from the East Orleans Energy Center. This line will also provide a source for LP&L's 500/230 KV Substation planned at Bogalusa, LA. This 500/230 KV substation will provide a firm source of power to the South MP&L area, unload the Franklin transformers and the 115 KV transmission from the Franklin EHV Substation, and solves overloading and low voltage problems associated with contingencies in the southern part of MP&L's service area (such as loss of Franklin transformers or loss of Brookhaven-McComb 115 Kv line). The Bogalusa Substation will eliminate the need to increase the transformer capacity at Franklin and to build additional 115 KV transmission from Franklin to McComb by the late 1980's;

 1. Franklin to LA state
 line 500 Kv line $23,650,000 1984
 2. Franklin Line Bay 1,750,000 1984
 ____________
 TOTAL $25,400,000

The eminent domain court judge also had before him the testimony of Frank F. Gallaher, Jr., chief engineer for appellant, whose testimony briefly explained that the primary purpose of the line was to convey electricity interstate to Louisiana but that it would be "stepped-down" at Bogalusa, Louisiana, and in the event it is needed in the future, it would be re-routed and no doubt re-bought by MP&L through 115 Kv lines now in existence between the two stations and would thereby benefit the counties in appellant's Mississippi territory near Louisiana.
The MPSC by statute admittedly had the duty to protect the interests of the utility and the consumer by holding that the 51 mile high voltage line in question was intrastate business, even though not one Mississippi consumer will receive electricity directly from the line. The cost of the 51 mile line in the sum of approximately $25,000,000 would be borne by the rate payers of Mississippi. This money paid for the line would then be added to the rate base at the utilities next rate increase request and therefore added to the bills sent Mississippi consumers.
The record does not reveal testimony of any sale agreement to MP&L by its sister company, Middle South Energy, Inc., the owner of Grand Gulf Generating Plant, both of whom are completely owned by Middle South Utilities, Inc. The record does show that by agreement appellant, MP&L, LP&L and NOPSI will buy Middle South Energy's portion of the capacity of energy from the Grand Gulf Plant. The record does not reveal any details regarding the sale by MP&L to LP&L when it does cross the Mississippi/Louisiana line on the 500 Kv line in question. There is no revelation as to the manner or the means of sale of electricity that might return to Mississippi from Louisiana through the Bogalusa substation. We are forced to conclude in this area, the lower court had ample reason to find that any future benefit of the line in question to Mississippi resident rate payers is highly speculative and something that might possibly materialize in the future.
The eminent domain court judge held that the granting of the certificate of public convenience and necessity exceeded the *113 statutory authority and jurisdiction of the Mississippi Public Service Commission and violated constitutional rights provided in Mississippi Constitution Article 3, Section 17. The reasoning for this holding was the language in the opinion to the effect that the primary purpose of the 500 Kv line was to carry electricity interstate from Grand Gulf to Louisiana. The order of the MPSC stated that it was granting appellant's application "to operate the same for the transmission and distribution of electricity for intrastate sales to and for the public for compensation."
We already have discussed and quoted pertinent parts of Judge Pigott's dismissal order. It should be remembered that appellant made the order of the MPSC a part of its condemnation petitions. We cannot disagree with Judge Pigott that this part of the condemnation proceedings wherein the MPSC granted its permission for "intrastate sales" was not a valid order.
Reiterating  Judge Pigott was in the seldom occurring situation of being the finder of facts when those facts are disputed or contradictory. We find that under the facts before him, Judge Pigott had ample reasons to find as a fact that "no Mississippi customer would be served off the transmission line in question." And ... "the primary stated purpose of the proposed 500 KV line is to transmit electrical energy from Franklin County, Mississippi, to Louisiana Power & Light near Bogalusa, Louisiana, and ultimately to be extended by LP&L to the eastern part of New Orleans, Louisiana. Not one Mississippi customer is to be served by the proposed transmission line."
The trial judge clearly found that the petition should be dismissed pursuant to the requirements of MCA § 11-27-15 (1972), in that there was no public necessity for the taking of the particular property or part thereof. The property was not being taken for "public use" and was not "in law a public use for which private property may be taken or damaged."
Even though Judge Pigott went further and held that MPSC erroneously labeled the line "intrastate", the opinion still conforms to the requirements of § 11-27-15. We agree that MPSC was in error in making the line "intrastate" but we do not think that this holding was necessary for the disposition of the condemnation proceeding as was done by Judge Pigott. We agree with him that the terms "public necessity" and "public use" as set out in the statutes that regulate the duties of the MPSC, contemplate use by the citizens of this state. This is true especially if these citizen rate payers are to pay $23,500,000 for a line and then have that amount added to their future rate base.
We find no error in the dismissal of the order of the Special Court of Eminent Domain and therefore affirm that court's action.
AFFIRMED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.