606 So.2d 93 (1990)
AMERICAN TELEPHONE & TELEGRAPH Company
v.
PURCELL COMPANY, INC. and Hancock Bank.
No. 07-CA-59153.
Supreme Court of Mississippi.
December 19, 1990.
Rehearing Denied October 1, 1992.
*94 Newt P. Harrison, James L. Halford, Brunini Grantham Firm, Jackson, Harry R. Allen, Allen Cobb & Hood, Robert W. Atkinson, Bryan Nelson Allen Firm, Gulfport, for appellant.
Virgil G. Gillespie, Gillespie & Gillespie, Gulfport, for appellee.
Before DAN M. LEE, SULLIVAN and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:

I.
The Special Court of Eminent Domain of Hancock County dismissed American Telephone & Telegraph Company's [AT & T] Petition to Exercise Right of Eminent Domain for failure to first obtain a Certificate of Public Convenience and Necessity from the Mississippi Public Service Commission [MPSC], a condition precedent to the exercise of eminent domain by a public utility. We affirm.

II.
AT & T, a New York Corporation which provides long distance telecommunications across the country, is qualified to do business, and in good standing, in Mississippi. The Articles of Incorporation for AT & T are on file with the Mississippi Secretary of State. Mississippi receives long distance telephone service through two interrelated AT & T entities: AT & T, Interstate Division and AT & T Communications of the South Central States, Inc. (ATTCOM), a wholly owned subsidiary of AT & T. AT & T, Interstate Division, handles no intrastate calls.
ATTCOM is a result of the court ordered divestiture of AT & T which requires complete diversity and separation from the Bell System by 1991. Pursuant to the court ordered divestiture, AT & T, through hundreds of its planners, designed a national and international digital telecommunications network using fiber optic cable.
In February of 1987, pursuant to application and 47 USCA § 151 et seq., the FCC granted a Certificate of Public Convenience and Necessity to American Telephone & Telegraph Company (AT & T) for the construction of a state-of-the-art telecommunications network utilizing fiber optic cable. A portion of the network, referred to as the Gulf Coast Lightguide System, was slated to run from Pensacola, Florida, to Beaumont, Texas, crossing Mississippi along the Gulf Coast, specifically Gulfport and Biloxi.
*95 Several alternatives were considered in the selection of the route for the network between Pensacola, Florida, and New Orleans, Louisiana. The project supervisor determined that the best route was down the median of an interstate highway, specifically, I-10, a highway bounded by fences and is, therefore, a no-access highway. The project supervisor wrote a letter to the Mississippi State Highway Department suggesting AT & T be allowed to utilize either the median or right-of-way along I-10 for installation of its cable. The Mississippi State Highway Department rejected the suggestion, stating that in order to utilize the right-of-way of I-10 AT & T would have to show a compelling need, something it could not do. An alternate route was selected: the south side of the south right-of-way fence running along I-10. This route runs on private property, including the property of the residential resort community of Diamondhead in Hancock County, Mississippi. Diamondhead is owned by Purcell Company, Inc. (Purcell).
Diamondhead community encompasses land to the north and south of I-10 in Hancock County, Mississippi. The proposed route of the cable crosses 3 1/2 miles, or more than 15,000 feet, of Purcell's property.
AT & T entered into negotiations with Purcell regarding the permanent and working easements which ultimately proved unsuccessful. The parties stipulated that these negotiations met the requirements of the law. On August 27, 1987, AT & T filed with the Special Court of Eminent Domain of Hancock County, Mississippi, a Petition to Exercise Right of Eminent Domain pursuant to Miss. Code Ann. § 77-9-717 (1972) which provides:
Telegraph and telephone companies, for the purpose of constructing new lines, are empowered to exercise the right of eminent domain, as provided in Chapter 27 of Title 11, Mississippi Code of 1972.
The parties stipulated that AT & T did not have a Certificate of Public Convenience and Necessity from MPSC. Purcell filed its Answer and Motion to Dismiss pursuant to § 11-27-15, which reads:
Any defendant may, not less than five (5) days prior to the date fixed for the hearing of the petition in the same court where the petition is pending, file a motion to dismiss the petition on any of the following grounds: (1) that the petitioner seeking to exercise the right of eminent domain is not, in character, such a corporation, association, district or other legal entity as is entitled to the right; (2) that there is no public necessity for the taking of the particular property or a part thereof which it is proposed to condemn; or (3) that the contemplated use alleged to be a public use is not in law a public use for which private property may be taken or damaged. Any such motion, if filed, shall be heard and decided by the judge as a preference proceeding, without a jury, prior to the hearing on the petition. Any party may appeal directly to the supreme court from an order overruling or granting any such motion to dismiss, as in other cases, but if the order be to overrule the motion, the appeal therefrom shall not operate as a supersedeas and the court of eminent domain may nevertheless proceed with the trial on the petition. Any appeal from an order overruling or granting a motion to dismiss shall be preference cause in the supreme court and advanced on the docket as appropriate.
The trial court took the case under advisement following a hearing on the Motion to Dismiss. Thereafter, the trial court dismissed the Petition of AT & T for failure to obtain a Certificate of Public Convenience and Necessity, a prerequisite to a public utility's exercise of the statutory authority of eminent domain.

STANDARD OF REVIEW
"Unlike other judicial proceedings, the Special Court of Eminent Domain results in the circuit judge [in counties where there is no county court] being the finder of facts in determining whether or not the condemnation petitions should be dismissed under the hereinbefore quoted MCA § 11-27-15 *96 (1972) ... [t]he principle issue is whether or not the trial judge had sufficient basis to dismiss the condemnation petitions." Mississippi Power & Light Co. v. Conerly, 460 So.2d 107, 109 (Miss. 1984) (emphasis added). Additionally,
As the proceedings have reached judicial proportions, there are certain elemental principles involved. Among them being, as said by this Court in Wise v. Yazoo City, 96 Miss. 507, 51 So. 453 (1910):
"No power conferred on any corporation, either private or municipal, is to be more strictly construed than the power to exercise the right of eminent domain."
... "The power of eminent domain being in derogation of the common right, acts conferring it are to be strictly construed, and are not to be extended beyond their plain provisions. The right to exercise the power is strictly limited to the purposes specified in the statute conferring it. The proposed use of the lands of the owner must be clearly embraced within the legitimate object of the power conferred. Where there is any doubt in regard to the extent of the power, the landowner must have the benefit of that doubt."
This Court recently has held that it is a general rule of statutory construction that where there is doubt of the right to exercise the power of eminent domain, the statutes will be strictly construed most favorably to the land owner. Roberts v. Mississippi State Highway Commission, 309 So.2d 156 (1975); Berry v. Southern Pine Electrical Power Association, 222 Miss. 260, 76 So.2d 212 (1954); and Ferguson v. Board of Supervisors, 149 Miss. 623, 115 So. 779 (1928).
Conerly, 460 So.2d at 111.

III.
AT & T argues that Congress has preempted State law with regard to the issuance of a Certificate of Public Convenience and Necessity for the construction of its primarily interstate telecommunications facility. We agree; Congress has preempted our State law in the field of interstate communications. See Communications Act of 1934, 47 U.S.C.A. § 151 et seq. We also agree that because of this preemption, the State of Mississippi has no authority to regulate the interstate business of AT & T. Had the trial court ruled that AT & T was subject to being regulated by MPSC, or that the certificate to be obtained from MPSC was to determine the public necessity of construction and/or installing the fiber optic cable, this assignment would have merit. However, such is not the case; we are dealing not with regulation of interstate commerce, but with the proper and necessary procedures required by our state law to take private property by eminent domain.
The power of eminent domain is an inherent right of the State which
sleeps in the bosom of the state until aroused into activity by an act of the legislature. This high power is never to be presumed to be confided to any public or private body or corporation, however great may be the necessity for it to have and exercise such power. When it is asserted by any person or corporation, the state's assent must be clearly given in legislative acts, and the subjects for which it may be exercised specifically named.
Wise v. Yazoo City, 96 Miss. 507, 51 So. 453, 455 (1910) (emphasis added). Indeed, AT & T correctly acknowledges that it is bound by, and must adhere to, the laws of this state when attempting to take lands within Mississippi. See § 11-27-1, Miss. Code.Ann. (1972), infra. All corporations, including public utility corporations, must follow State law when attempting to take State property by eminent domain. Therefore, the only issue left for discussion is: What does our State law require as condition[s] precedent, if any, to a public utility's exercise of the power of eminent domain.

IV.

A.
Chapter 27 of Title 11, entitled "Eminent Domain," sets out in § 11-27-1 who *97 is entitled to exercise the right of eminent domain:
Any person or corporation having the right to condemn private property for public use shall exercise that right as provided in this chapter, except as elsewhere specifically provided under the laws of the state of Mississippi.
The balance of Chapter 27 establishes the court of eminent domain and sets out the pleadings to be filed and the procedures to be followed in the special court of eminent domain. See § 11-27-1 through § 11-27-91.
AT & T filed its Petition, and claims the right to exercise the power of eminent domain, pursuant to § 77-9-717:
Telegraph and telephone companies, for the purpose of constructing new lines, are empowered to exercise the right of eminent domain, as provided in Chapter 27 of Title 11, Mississippi Code of 1972.
Reading the foregoing statutes together, it is clear that prior to exercising the power of eminent domain, AT & T is required to prove that it is (1) a telephone company (2) which is constructing new lines and (3) has taken the necessary steps to invoke the power of eminent domain. AT & T submits that it is not only a telephone company, it is an interstate telephone company which is constructing new lines and therefore, qualifies as a corporation having the right to condemn private property. Neither of these claims is seriously contested; whether AT & T took the necessary steps to invoke the power is contested, and evidence on this issue was received.
"The rule is well established that a corporation is a legal entity separate and distinct from its shareholders." Skinner v. Skinner, 509 So.2d 867, 870 (Miss. 1987), citing Bruno v. Southeastern Services, Inc., 385 So.2d 620 (Miss. 1980), Fairchild, et al. v. Keyes, 448 So.2d 292 (Miss. 1984), and Vickers v. First Mississippi National Bank, 458 So.2d 1055 (Miss. 1984). Accord U.S. v. State Tax Commission of State of Miss., 505 F.2d 633 (5th Cir.1974) and Childers v. Beaver Dam Plantation, Inc., 360 F. Supp. 331 (N.D.Miss 1973) (applying Mississippi law). A corporation, through its Articles of Incorporation, By-Laws and state statutes, is given the authority to act provided the proper formalities are followed. See Jackson Redevelopment Authority v. King, Inc., 364 So.2d 1104, 1110-11 (Miss. 1978); 18 C.J.S. Corporations. Although a corporation is vested with the authority to act, valid affirmative action on the part of the corporation is required in order to transform the authority to act into a resolution to act and subsequent action. See Mississippi Power & Light Co. v. Conerly, 460 So.2d 107, 112 (Miss. 1984); Jackson Redevelopment Authority v. King, Inc., 364 So.2d 1104, 1110-11 (Miss. 1978); Mississippi Power & Light Company v. Blake, 236 Miss. 207, 217, 109 So.2d 657 (1959).
A corporation speaks and acts through its records and minutes. See 18 C.J.S. Corporations § 191, § 554; 19 C.J.S. Corporations § 751. A formal corporate resolution is not the only evidence of corporate action, however, corporate records and minutes constitute the best evidence of corporate action. 32A C.J.S. Evidence, § 810. If corporate records and minutes of the action are available, parole evidence is not admissible to prove the corporation action, personal knowledge of corporate action is always admissible. 32A C.J.S. Evidence, § 810.
We have examined the record before us with great care and note that many of the exhibits introduced at the hearing are not included in the record for our review. The record does contain documentation which AT & T represented at trial evidenced "the authority from American Telephone and Telegraph Company down to authorizing the institution of this eminent domain suit." Of these documents only a letter on AT & T letterhead, dated June 25, 1987, from the Manager of Real Estate to five (5) people requesting approval to initiate eminent domain action in connection with the Gulf Coast Light Guide System affords any insight into the actions taken to invoke the power of eminent domain. However, the letter does not indicate *98 which corporation  AT & T, ATTCOM or AT & T Communications, Inc.  is requesting approval, nor do any of the names appearing on this letter appear on the AT & T Communications, Inc. minutes reflecting election of officers.
In short, faced as we are with the activities of three (3) corporate entities, with no testimony or evidence from any corporate entity regarding the formal action taken, if any, or validity of that action, we have no way of knowing which corporation is, in fact, seeking to invoke the power of eminent domain and approval of its actions. AT & T assures us that it, and it alone, is seeking to invoke the power of eminent domain. However, because this record contains no evidence of valid, affirmative action on the part of AT & T transforming the statutory authority of eminent domain into action, we find that AT & T has not met the first prerequisite to the exercise of the statutory right of eminent domain.
AT & T submits that our inquiry should stop with analysis of the foregoing two statutes, for that is all our law requires for the exercise of eminent domain. However, AT & T admits that it is a public utility as defined in our statutes. See Miss. Code Ann. § 77-3-3(d)(iii). Therefore, our inquiry into conditions precedent required by our law before the power of eminent domain may be properly invoked and exercised must continue.

B.
Chapter 3 of Title 77 is entitled "Regulation of Public Utilities". Article 1 is entitled "Certificates of Public Convenience and Necessity; Rates; Service." The pertinent statutes in Article 1 of Chapter 3, Title 77 follow.
§ 77-3-2. Declaration of policy.
(1) The Legislature finds and determines that the rates, services and operations of public utilities as defined in this title are affected with the public interest and that the availability of an adequate and reliable service by such public utilities to the people, economy and government of the state of Mississippi is a matter of public policy. The Legislature hereby declares to be the policy of the State of Mississippi:
(g) To cooperate with other states and the federal government in promoting and coordinating interstate and intrastate public utility service and reliability;
(2) To these ends, therefore, authority shall be vested in the Mississippi Public Service Commission to regulate public utilities, in accordance with the provisions of this title.
§ 77-3-5. Jurisdiction and powers of commission.
Subject to the limitations imposed in this article and in accordance with the provisions hereof, the public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities. However, the commission shall not have jurisdiction over the production and gathering of natural gas or the sale of natural gas in or within the vicinity of the field where produced ...
§ 77-3-11. Certificate of public convenience and necessity required.
(1) No person shall construct, acquire, extend or operate equipment ... for the operation of a public utility operating a business and equipment or facilities as contemplated by subparagraph (iii) of paragraph (d) of Section 77-3-3, without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require the operation of such equipment or facility.
§ 77-3-3. Definitions.
As used in this chapter:
(a) The term "corporation" includes a private or public corporation, ...
(b) The term "person" includes a natural person, a partnership of two (2) or more persons having a joint or common interest, a cooperative, nonprofit, limited dividend or mutual association, a corporation or any other legal entity.
(d) The term "public utility" includes persons and corporations, or their lessees, trustees and receivers now or hereafter *99 owning or operating in this state equipment or facilities for:
(iii) The transmission, conveyance or reception of any message over wire, or by radio, or otherwise, of writing, signs, signals, pictures and sounds of all kinds by or for the public, where such service is offered to the public for compensation, and the furnishing, or the furnishing and maintenance, of equipment or facilities to the public, for compensation, for use as a private communications system or part thereof; however, no person or corporation not otherwise a public utility within the meaning of this chapter shall be deemed such solely because of engaging in this state in the furnishing, for private use as last aforementioned, and moreover, nothing in this chapter shall be construed to apply to television stations, radio stations or community television antenna services.
When we read the Public Utility statutes, and more specifically § 77-3-11, in conjunction with § 77-9-717 and § 11-27-1, supra, it is clear that if AT & T proves that it is a telephone company constructing new lines which has taken the necessary corporate steps to invoke the power of eminent domain and has obtained a certificate from the MPSC, then it is entitled to invoke the power of eminent domain. The parties stipulated that AT & T did not have a certificate from MPSC. Based on that stipulation, and the foregoing analysis, the trial court dismissed AT & T's petition. AT & T argues that, in doing so, the trial court erred because State law does not require it to submit to the jurisdiction of the MPSC and, further, even if they were to submit to the jurisdiction of MPSC, the MPSC does not have the jurisdiction to regulate its activities. Of course, the MPSC cannot regulate the activities of AT & T. See Section III, supra. However, Mississippi law, which AT & T admits it is bound to follow when it attempts to invoke the powers of eminent domain within this state, requires submission to the jurisdiction of the MPSC in order to obtain a Certificate of Public Convenience and Necessity for the taking.

C.
The Legislature, by enacting Chapter 3 of Title 77, created the MPSC and made that agency "an arm of the legislature" which "understandably and properly oversees the actions of the utility companies in order to safeguard the rights of the people of this State." Mississippi Power & Light Co. v. Conerly, 460 So.2d 107, 111 (Miss. 1984). However, "[t]he MPSC ... only has jurisdiction within the State of Mississippi in such matters, and consequently, has the duty to control and regulate `intrastate' utility activities." Id. See also § 77-3-5, supra. This Court has recognized that jurisdictional limitation where the MPSC has attempted to regulate interstate sales of electricity and gas. Mississippi Power & Light Co. v. Conerly, 460 So.2d 107 (Miss 1984); United Gas Pipe Line Co. v. Mississippi Pub. Serv. Com'n, 241 Miss. 762, 133 So.2d 521 (Miss. 1961); Texas Gas Transmission Corporation v. Mississippi Pub. Serv. Com'n., 241 Miss. 826, 133 So.2d 526 (Miss. 1961).
Clearly, then, MPSC has jurisdiction over public utilities who engage in intrastate activities. AT & T admits it is a public utility as defined in our statutes. See Miss.Code Annot. § 77-3-3(d)(iii). This admission necessarily concedes MPSC jurisdiction if taking of property by eminent domain is an intrastate activity over which the MPSC has authority.

D.
The authority of the MPSC to make a determination regarding a public utility's taking of private property by eminent domain was addressed by this Court in Mississippi Power & Light Company v. Blake, 236 Miss. 207, 109 So.2d 657 (Miss. 1959):
The appellant, under the provisions of Section 2780, Code of 1942, Recompiled, is empowered to exercise the right of eminent domain. However, by the enactment of Chapter 372, Laws of 1956 [currently 77-3-1, et seq.], this statute was superimposed upon Section 2780, supra, in the exercised of that right. Consequently, *100 as a condition precedent to the exercise thereof, the Power Company was required to obtain from the Public Service Commission a certificate of public convenience and necessity.

Id. at 661 [emphasis added].
Based on the foregoing, we hold that the legislature has given the MPSC the duty, authority, and therefore jurisdiction, over public utilities who come into the State of Mississippi and attempt to invoke the statutory right of eminent domain. It was, therefore, incumbent upon AT & T to comply with state law and, as a condition precedent to the exercise of the statutory right of eminent domain pursuant to § 77-9-717, to submit to the jurisdiction of the MPSC and obtain the following: (1) a determination that AT & T qualified as an entity to which the legislature had granted the power of eminent domain pursuant to § 11-27-1 and § 77-9-717; (2) a determination that AT & T had complied with state law in invoking the statutory power of eminent domain; and (3) a Certificate of Public Convenience and Necessity for the particular taking in question.
We note that in its brief and in oral argument Purcell contended that this case is moot and should be dismissed because during 1988 AT & T placed the fiber optic cable in the median of I-10 and the cable has been in use since that time. While this Court does not adjudicate moot questions, we hold that this argument, although extremely close, is controlled by Ohio Oil Company v. Fowler, 100 So.2d 128 (Miss. 1958), and, therefore, this case is not moot.
The principle issue before us is whether the trial judge had sufficient basis to dismiss the condemnation petition. The trial court dismissed the action sub judice for failure to comply with the conditions precedent to the exercise of the statutory right of eminent domain. Applying our standard of review, and based on the record before us, we find that the trial court had sufficient basis to dismiss the condemnation petition and we therefore affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and SULLIVAN, and PITTMAN, JJ., concur.
ROBERTSON, J., joined by PRATHER, J., dissents by separate written opinion.
ANDERSON and BLASS, JJ., not participating.
ROBERTSON, Justice, dissenting:

I.

THE JURISDICTIONAL PROBLEM
Section 77-3-5 provides "the public service commission shall have exclusive original jurisdiction over the intrastate business and property of public utilities." Miss. Code Ann. § 77-3-5 (1972) [emphasis supplied]. By the very wording of the statute, the MPSC's powers are limited to intrastate business; activity considered otherwise is beyond its jurisdictional grasp. Our law elsewhere defines "intrastate commerce" as "any and all commerce or trade that is begun, carried on, and completed wholly within the limits of the State of Mississippi ..." Miss. Code Ann. § 75-27-3 (1972). This Court has held similarly. United Gas Pipe Line Co. v. Mississippi Public Service Commission, 241 Miss. 762, 133 So.2d 521, 525 (1961). I doubt anyone will argue there exists a difference between "commerce" and "business."
AT & T proposes to install a state-of-the-art fiber optic cable facility. The proposed route for the facility runs from Pensacola, Florida to Beaumont, Texas. That certain activities occur only in one state does not change the interstate character of the activity. Furst v. Brewster, 282 U.S. 493, 497-98, 51 S.Ct. 295, 296-97, 75 L.Ed. 478 (1931). Although AT & T's project concerns eminent domain rules within Mississippi, the activity remains an interstate activity beyond this state's authority.

II.

THE PREEMPTION PROBLEM
Pursuant to 47 U.S.C. § 214 (1982), AT & T acquired a Certificate of Public Convenience and Necessity from the Federal *101 Communications Commission. § 214 provides:
No carrier shall undertake the construction of a new line or an extension of any line, or shall acquire or operate any line, or extension thereof, or shall engage in transmission over or by means of such additional or extended line, unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, or such additional or extended line ...
The majority reverses because AT & T failed to comply with § 77-3-11. This statute provides:
No person shall construct, acquire, extend or operate equipment ... for the operation of a public utility operating a business and equipment... without first having obtained from the commission a certificate that the present or future public convenience and necessity require or will require the operation of such equipment or facility.

Miss. Code Ann. § 77-3-11(1) (Supp. 1989).
These statutes serve the same purpose but within separate realms of our federal system. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Louisiana Public Service Commission v. Federal Communications Commission, 476 U.S. 355, 368-69, 106 S.Ct. 1890, 1898-99, 90 L.Ed.2d 369 (1985); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); Jones v. Rath Packing Co., 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).
In the case at bar both the state and federal governments have approved legislation concerning the same matter. Quite appropriately, the state statute applies to intrastate activities while the federal statute applies to interstate activities. Applying the state statute in the majority's manner allows the state effectively to overrule the Congress, a result I suspect is forbidden under Article VI, § 2. Mississippi Power & Light Company v. Mississippi Ex Rel. Moore, 487 U.S. 354, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988); Transcontinental Gas Pipe Line Corp. v. State Oil & Gas Board, 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986).
I respectfully dissent.
PRATHER, J., joins this opinion.