GRIFFIS, J., for the Court.
¶ 1. White Oak, LLC (“White Oak”) appeals the entry of a summary judgment that dismissed its claims against Tougaloo College and Tougaloo College Economic Development Corporation (“Tougaloo EDC”). We reverse and remand for further proceedings.
FACTS
¶ 2. Tougaloo College is a private, nonprofit institution of higher education that is located in Madison County, Mississippi. Tougaloo College is governed by its Board of Trustees.
¶ 3. Tougaloo EDC is a non-profit organization established by the Tougaloo College Board of Trustees to develop the assets and resources of Tougaloo College for the benefit of the institution. Tougaloo EDC was formed to provide recommendations to Tougaloo College’s Board of Trustees regarding fund-raising and economic development activities. Tougaloo EDC’s Board of Directors were selected by the Tougaloo College Board of Trustees, and many of the Tougaloo EDC board members also serve as members of the Touga-loo College Board of Trustees.
¶ 4. White Oak is a real estate development corporation. White Oak began discussions with Tougaloo College and Touga-loo EDC to develop valuable real estate owned by Tougaloo College.
¶ 5. In May of 2000, Tougaloo College authorized Tougaloo EDC to sign a letter of agreement with White Oak that would authorize White Oak to undertake a preliminary feasibility study and to present a proposal to Tougaloo College and Tougaloo EDC for the development of a golf course, hotel and conference center. Under the terms of their agreement, Tougaloo College and Tougaloo EDC were under no obligation unless they accepted White Oak’s proposal.
¶ 6. In October of 2000, after receiving a response from White Oak, Tougaloo EDC was authorized to prepare an option and lease agreement between Tougaloo College and White Oak. The agreement was subject to review by Tougaloo College and Tougaloo EDC.
¶ 7. On February 23, 2001, Tougaloo EDC presented the Tougaloo College Board of Trustees with a final draft of the option and lease agreement. The agreement approved White Oak as the developer of real estate owned by Tougaloo College, and it included a proposal to build a golf course, hotel and conference center. The Tougaloo College Board approved the draft but required its legal counsel, Robert Gibbs, to review the agreement. The final draft of the agreement was sent to the Board members on March 29, 2001. In April of 2001, Gibbs sent a letter to the Tougaloo EDC approving the agreement. *949 The letter was then sent to Tougaloo College.
¶ 8. On May 4, 2001, an “Option to Lease” (the “Option Agreement”) was entered “between Tougaloo Economic Development Corporation & Tougaloo College (“Optionor”) and White Oak LLC (“Op-tionee”)” The Option Agreement provided that White Oak then held a six month option to lease the property and other selected provisions stated:
This Option may be exercised by written notice signed and delivered by Optionee [White Oak] to Optionor [Tougaloo EDC and Tougaloo College], along with a written commitment for financing for construction of a Golf Course and Hotel Conference Center that is satisfactory to [White Oak] in the amount of not less than Seventeen Million Dollars ($17,-000,000.00).
Upon the signing of the Lease, [White Oak] shall pay [Tougaloo EDC and Tou-galoo College] $50,000.
A proposed lease agreement was attached to the Option Agreement as an exhibit.
¶ 9. By letter dated Mary 19, 2001, Robert Jones, the Chairman of Tougaloo EDC’s Board, advised White Oak that representatives of Tougaloo College and Tou-galoo EDC had inadvertently signed the lease agreement in addition to the Option Agreement. The letter also stated that the lease agreement would not be “operative until you have satisfied the requirements of the Option Agreement.”
¶ 10. On October 18, 2001, the Tougaloo EDC Board met. The parties give us different versions of the actions taken at this meeting and the effect of such actions.
¶ 11. White Oak offered the affidavit of Gary Light, the principal of White Oak. Light testified that he was ready and prepared to exercise the option. All documents necessary to exercise the option were presented and the funds were available. However, the Tougaloo EDC Board voted to extend the Option Agreement to allow Tougaloo EDC to seek tax exempt financing for the development. Light testified that he observed the Board vote to grant an extension, which was later confirmed in a letter that he received. Light stated that he relied on these representations to continue to pursue the project.
¶ 12. The minutes of the Tougaloo EDC board meeting of October 18, 2001 confirm Light’s affidavit. The minutes reflect that there was a discussion about the White Oak proposal. The Board discussed changing its bylaws to secure financing and the procedure to follow to make a decision about the financing issue. A motion was made, seconded and the Tougaloo EDC board approved a four-month extension on the Option Agreement until February of 2002. Two board members voted against the extension. The minutes also reflect the presence of counsel Robert Gibbs.
¶ 13. In this case, however, Tougaloo College and Tougaloo EDC argue that the Tougaloo EDC Board “voted to recommend to Tougaloo that the Option to Lease be extended.” We must candidly state that the evidence before this Court of that meeting simply does not support this claim. Indeed, there was no written evidence that the motion was merely a recommendation, that Tougaloo College would have to make the decision, or that any further authorization was required. Instead, the exact language used in the Tou-galoo EDC minutes was “a 4-month extension to February 2002 was requested. The motion was seconded ... and carried .... ”
¶ 14. The following day, on October 19, 2001, the Tougaloo College Board of Trustees met. The events of the previous day were known by many in attendance at this *950 meeting because the two boards have a number of members who overlap and serve on both. The only evidence of this meeting in the record was the February 2002 report of Tougaloo EDC, which states:
11) On October 19, 2001 at the full TC [Tougaloo College] Board meeting EDC presented a motion to expand its ByLaws to include language that, if approved by the IRS, would allow it [Tou-galoo EDC] to issue tax exempt bonds for the development of excess land. After discussion, a motion was made to table the request.
This discussion was clearly about the tax exempt financing. There was no indication that the extension was discussed. Likewise, there is no evidence that Touga-loo College or Tougaloo EDC notified White Oak of what they claim in this litigation, that the extension granted by Touga-loo EDC’s Board would have no effect unless approved by Tougaloo College’s Board.
¶ 15. By letter dated October 23, 2001, Robert W. Jones, Chairman of Tougaloo EDC’s Board, advised Light that “on October 18, 2001, the Board of Directors of Tougaloo College Economic Development Corporation approved the extension of the above captioned option agreement with White Oak LLC to February 25, 2002.” Tougaloo College and Tougaloo EDC argue before this Court that the letter “did not indicate that Tougaloo [College’s] Board of Trustees had also agreed to such an extension.” The other side of that argument is that the letter clearly did not indicate that Tougaloo College’s Board opposed the extension.
¶ 16. According to Light, Tougaloo College and Tougaloo EDC thereafter undertook efforts to secure financing for the real estate project, with the assistance of White Oak and its bond counsel. Light testified that after the October 18th meeting, he had numerous conversations with Gibbs, as the attorney for both Tougaloo EDC and Tougaloo College, about the project financing. Light claims that he was never informed that Tougaloo EDC and Tougaloo College did not intend to pursue tax exempt financing or that there was any problem with the extension of the Option Agreement. Light also testified of his actions to further the project during October, November and December of 2001. Tougaloo EDC and Tougaloo College did not offer any evidence to rebut Light’s affidavit.
¶ 17. Tougaloo College and Tougaloo EDC claim that White Oak did not exercise the option prior to November 4, 2001, and the Option Agreement expired on that date.
¶ 18. On November 29, 2001, Gibbs sent a letter to Light. The letter was addressed to 9310 Huntcliff Trace, Atlanta, Georgia, and not the address listed under the notice section of the Option Agreement. Gibbs letter stated that “[a]s attorney for Tougaloo College, I have been asked to review the Option to Lease Agreement, the Lease Agreement, and your letter to determine whether the terms of the Option have been complied with.” Gibbs concluded that, since White Oak did not make the $50,000 payment, ‘White Oak has breached both the Option and Lease Agreement, and Tougaloo College will not execute another Lease Agreement.”
¶ 19. On January 24, 2002, White Oak sent a letter to Tougaloo College and Tou-galoo EDC requesting information as to the status of the financing and reiterating its desire to proceed with the project. There is nothing in the record to suggest that White Oak received any response.
¶ 20. On February 21, 2002, White Oak sent a letter to Tougaloo College’s Presi *951 dent, Dr. James H. Wyehe, with a copy to Robert Jones, Chairman of Tougaloo EDC Board of Directors, and LeRoy Walker, Chairman of the Board of Trustees of Tou-galoo College. In the letter, White Oak exercised its option pursuant to the agreement and tendered a cashier’s check in the amount of fifty thousand dollars ($50,000).
¶ 21. By letter dated February 26, 2002, Gibbs sent a letter to Light and stated that Tougaloo College and Tougaloo EDC returned the funds and declared that White Oak had not complied with the terms of the agreement, and Tougaloo and Tougaloo EDC considered White Oak to be in breach of the agreement. This letter was also sent to Light at the Atlanta address and not to the address listed in the Option Agreement.
¶ 22. On May 1, 2003, White Oak commenced this action by filing its complaint before the Circuit Court of Madison County. White Oak asserted claims for breach of contract, tortious breach of contract, fraudulent misrepresentations and/or omissions, breach of implied covenants of good faith and fair dealing, and unjust enrichment. White Oak sought compensatory and punitive damages together with attorney’s fees, costs and interest. On August 23, 2004, the circuit court judge executed his final judgment and granted Tougaloo College’s and Tougaloo EDC’s motion for summary judgment. The final judgment contained no discussion of the facts or applicable law. From this judgment, White Oak appeals.
STANDARD OF REVIEW
¶ 23. Rule 56(e) of the Mississippi Rules of Civil Procedure provides that a summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We review the decision to grant a summary judgment on a de novo standard of review. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77 (¶ 9) (Miss.2002) (citations omitted). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. at 1177. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his or her favor. Id. Issues of fact sufficient to require reversal of a summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. Id.
ANALYSIS
¶ 24. In the motion for summary judgment, Tougaloo College and Tougaloo EDC argue that the Option Agreement expired on November 4, 2001, since White Oak did not exercise its option during the six month period. They also argue that no extension was granted. They argue that the Option Agreement required that any modification be in writing signed by both Tougaloo College and Tougaloo EDC. The Option Agreement falls under the statute of frauds, Mississippi Code Annotated Section 15-3-l(c) (Rev.2003), which requires that a lease be “signed by the party to be charged therewith ...” Tougaloo College and Tougaloo EDC argue that since there was no writing extension or modification signed by Tougaloo College, the Option Agreement was never extended.
¶ 25. Tougaloo College and Tougaloo EDC argue for the following interpretation of the Option Agreement. First, the Option Agreement specifically required that modifications be in writing. The Option Agreement provided:
*952 7. Entire Agreement
This Agreement contains the entire Agreement between the parties relating to the Option granted in the Agreement. Any oral representations or modifications concerning the Option made by either party before or after the execution of this Agreement will have no force. This Agreement may be amended in the future by the written agreement of both parties.
(emphasis added.) Next, they assert that the language “both parties” means the “optionor” and “optionee.” However, they contend that “optionor” includes both Tou-galoo College and Tougaloo EDC. Thus, they claim that any written modification, such as an extension, was required to be executed by White Oak, Tougaloo College and Tougaloo EDC. They claim that this provision is not ambiguous, and it demonstrates the intent of the parties to limit the manner and procedure by which the Option Agreement could be modified.
¶ 26. Tougaloo College and Tougaloo EDC argue that Mississippi courts must construe contracts in accordance with their ordinary and plain meaning. Miss. Farm Bureau Cas. Ins. Co. v. Britt, 826 So.2d 1261, 1265 (Miss.2002). Hence, they argue that the plain meaning is that the extension required a written amendment signed by White Oak, Tougaloo College and Tou-galoo EDC.
¶ 27. The Option Agreement begins with the following:
OPTION TO LEASE
Preamble
This Agreement is made on this 4th day of May, 2001 at Jackson, Mississippi, between Tougaloo Economic Development Corporation, Tougaloo Board of Trustees (“Optionor”) and White Oak LLC (“Optionee”).
Recitals
Optionor is the owner of a tract of unimproved land comprising approximately 160 acres (the “Land”), located in Jackson, Mississippi,....
Optionee wishes to acquire the exclusive right and option to lease the Land at an agreed rental price and under specified terms.
The Option Agreement is signed by the “optionor” and the “optionee.” Under the heading for “Optionor” to sign, the very first signatory line is for Robert W. Jones, Chairman of Tougaloo EDC. Leroy Walker signed as Chairman of Tougaloo College and Joe A. Lee signed as President of Tougaloo College.
¶ 28. A plain reading of the Option Agreement leads us to one conclusion— there were two, not three, parties to the Option Agreement. Throughout the Option Agreement and the attached Lease Agreement, the terms “optionor” and “landlord” are used in the singular, not the plural. A plain reading of the Option Agreement indicates that the term “op-tionor” included both Tougaloo College and Tougaloo EDC. The language in paragraph 7, which allowed an amendment “by the written agreement of both parties,” refers to “optionor” and “optionee.” The question is whether Tougaloo EDC had the authority, either apparent or implied, to execute a document that bound the “op-tionor” (both Tougaloo College and Touga-loo EDC) under the terms of the Option Agreement.
¶ 29. By the language used in the Option Agreement to designate the parties, it appears that the plain meaning of the agreement supports the conclusion that Tougaloo EDC had the power and authority to act on behalf of Tougaloo College and extend the time- period of the Option *953 Agreement. The brief of Tougaloo College and Tougaloo EDC further aids this conclusion. The brief states that Tougaloo EDC “was formed to provide recommendations to Tougaloo’s Board of Trustees regarding fund-raising and economic development activities.” They try to avoid this conclusion by arguing that there are three parties to the Option Agreement. However, the agreement itself clearly contradicts this statement.
¶ 30. The motion for summary judgment is based on the fact that both Touga-loo College and Tougaloo EDC did not agree to the extension in writing. They argue that since both did not sign a written modification to extend the Option Agreement, then the representations made by Tougaloo EDC that an extension was granted was of no effect whatsoever.
¶ 31. The evidence before this Court clearly establishes that Tougaloo EDC, through its board of directors, granted an extension. At Tougaloo EDC’s October 18, 2001, board meeting, the Board approved a motion to grant White Oak a four month extension. The minutes of the meeting clearly reflect that an extension was requested, a motion was made, and the motion passed. Hence, Tougaloo EDC’s board granted White Oak an extension through February 2002. Tougaloo EDC, as a corporation, speaks through its minutes. Am. Tel. & Tel. Co. v. Purcell Co., 606 So.2d 93, 97 (Miss.1990). The minutes reflect the best evidence of Tougaloo EDC’s actions. Id.
¶ 32. Five days later, Tougaloo EDC’s chairman sent a letter to White Oak that confirmed the extension. Jones’ letter said “on October 18, 2001, the Board of Directors of Tougaloo College Economic Development Corporation approved the extension of the above captioned option agreement with White Oak LLC to February 25, 2002.”
¶ 33. Tougaloo College’s contention that this was simply a vote to recommend an extension be approved is simply not supported by the best evidence available. As far as Tougaloo EDC is concerned, it is certainly bound by its actions that granted an extension to White Oak. The trial judge was clearly in error to grant a summary judgment as to Tougaloo EDC.
¶ 34. We move to whether Tougaloo College is bound by Tougaloo EDC’s action. The only evidence in the record of the October 19, 2001, Tougaloo College Board of Trustees’ meeting is the February 2002 report of Tougaloo EDC. The report discussed the question of extending the bylaws of Tougaloo EDC to allow it to issue tax exempt bonds. There is nothing that would indicate that the Tougaloo College Board even discussed the extension. Nevertheless, there are facts in the record that indicate that the action of the Touga-loo EDC board, which granted an extension, were known by the Tougaloo College Board because the two boards have a significant number of members who overlap and serve on both. Thus, with knowledge that Tougaloo EDC’s Board had granted the extension, Tougaloo College’s Board did nothing and was silent.
¶ 35. Tougaloo College contends that this silence was a rejection of Tougaloo EDC’s board’s action. The standard of review requires that we view the evidence in the light most favorable White Oak. McMillan, 823 So.2d at 1173 (¶ 9).
¶ 36. Tougaloo EDC approved the extension. With thirteen members of the Tougaloo College Board of Trustees being present at the October 18th Tougaloo EDC board meeting, there is clearly sufficient facts to establish a genuine issue of material fact in dispute that Tougaloo College either agreed with or tacitly approved the extension.
*954 ¶ 37. Further, Tougaloo College and Tougaloo EDC are not un-related third party corporations dealing at arms length. They have a number of overlapping board members. As we previously discussed, the argument offered by Tougaloo College and Tougaloo EDC that any modification required the signature of Tougaloo College and Tougaloo EDC is neither logical nor within the plain meaning of the contractual provisions of the Option Agreement. Neither Tougaloo College, Tougaloo EDC, nor the dissent refer us to a contractual provision or legal authority that would support their interpretation.
¶ 38. The Option Agreement and the proposed Lease Agreement refer to two, not three, parties. The Option Agreement refers to the “optionor” and the “op-tionee.” The Lease Agreement refers to the “landlord” and the “tenant.” In both documents, the “optionor” and the “landlord” are identified as Tougaloo College and Tougaloo EDC. Further, in both documents, the division of rights, duties and obligations are divided between two parties, either the “optionor” or “landlord” on the one hand or the “optionee” or “tenant” on the other. Nevertheless, the dissent concludes that there were three entities as parties and that Tougaloo College and Tougaloo EDC were separate and distinct contracting parties. Yet, the dissent does not, and perhaps because it cannot, point us to any provision where the parties used the plural, e.g. “optionors” or “landlords”, instead of the singular, e.g. “optionor” or “landlord.” The Option Agreement certainly does not differentiate the rights, duties and responsibilities of Tougaloo College as opposed to Tougaloo EDC. Even the notice provision, cited by the dissent, states that “either party may change the address to which notices are to be sent by giving the other party written notice.... ” Somehow, the dissent reads that to require notice given to both Tougaloo College and Tougaloo EDC. Instead, “the other party” refers to “optionor” or “optionee”. Our conclusion is not that Tougaloo EDC was the agent of Tougaloo College. Instead, we find that there are genuine issues of material fact in dispute on this issue and that summary judgment is not proper.
¶ 39. Accordingly, we find that there exists a genuine issue of a material fact in dispute as to whether Tougaloo EDC was an agent of Tougaloo College and neither are entitled to a judgment as a matter of law. Therefore, the judgment of the Circuit Court of Madison County is reversed and remanded for further proceedings consistent with this opinion.
¶ 40. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
MYERS, P.J., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, P.J., AND IRVING, J.